STATE EX REL. BERNAL, Petitioner, v. HERSHMAN, Super-
intendent, Respondent.*

*No. State 241. Argued January 28, 1972.—Referee's report filed
March 24, 1972.—Decided May 4, 1972.*
(Also reported in 196 N. W. 2d 721.)

---

* Motion for rehearing denied, without costs, on June 8, 1972.

For the petitioner there was oral argument by *John F. Ebbott,* Freedom Through Equality, Inc., of Milwaukee.

For the attorney general, *Robert W. Warren,* there was oral argument by *William A. Platz,* assistant attorney general.

HALLOWS, C. J. The facts are that on December 10, 1968, Bernal, when he was thirteen years of age, was found to be a delinquent child by the juvenile court of Monroe county and his legal custody was transferred to the state department of health & social services pursuant to sec. 48.34 (1) (d) 4, Stats.[1] The department pursuant to sec. 48.51 (2),[2] after Bernal was in custody for some time, granted him his "liberty under supervision" and placed him in his mother's home. This was on June 24, 1971, when he was sixteen years of age and he signed the usual agreement form of release. About October 24, 1971, Bernal left his mother's home and violated the conditions of his release. His mother did not know where he was and there was some evidence he was living with a girlfriend. He was apprehended on January 5, 1972, by the Milwaukee police and was taken to the Milwaukee

---

[1] "48.34 **Disposition if child adjudged delinquent.** (1) TYPE OF DISPOSITION. If the court finds that the child is delinquent, it shall enter an order making one of the following dispositions of the case: . . .

"(d) Transfer legal custody of the child to one of the following:

"1. A relative of the child; or

"2. A county agency specified in s. 48.56 (1); or

"3. A licensed child welfare agency; or

"4. The department; . . ."

[2] "48.51 **Type of care.** (1) Depending on the results of the examination of the child, the department may place the child in any of the appropriate facilities described in s. 48.52.

"(2) In addition, if the child has been adjudged delinquent, the department may allow him his liberty under supervision either immediately or after a period in one of the facilities described in s. 48.52. If this is unsatisfactory in the judgment of the department, it may place the child in one of the facilities described in s. 48.52."

police station for questioning about a burglary. The following day he was placed in the Milwaukee county children's court center and on January 11, 1972, he was transferred to the reception center at Wales. Detailed reports of Bernal's failure to comply with the regulations of the department were made by an officer of the department, which were reviewed and approved by several supervisors. A hearing was scheduled before the review board to determine whether his liberty under supervision should be revoked and if the revocation was approved, in what facility Bernal would be placed.

Bernal claimed he had certain constitutional rights to procedural safeguards at such hearing and demanded: (1) Release pending the hearing, (2) counsel at the hearing, (3) a list of the alleged violations, (4) the right to have evidence taken at the hearing, (5) the right to cross-examine witnesses, (6) the right to produce witnesses, and (7) other rights. These demands were denied. Bernal was given an informal hearing and an opportunity to explain the alleged violations. His explanation was not accepted by the review board, which revoked his "liberty under supervision" and placed him in the Wisconsin School for Boys where he is now incarcerated. Thereafter he filed his petition in this court for a writ of habeas corpus.

The referee, after hearing the evidence, took the view the issues presented were substantially the same as existed in *State ex rel. Johnson v. Cady* (1971), 50 Wis. 2d 540, 185 N. W. 2d 306, in which we held an adult convicted of a crime and on parole was entitled to a fair and meaningful administrative hearing at which he had a right to be heard on the alleged parole violations with a record made which would enable him to have an adequate judicial review by certiorari to determine whether the department acted capriciously or arbitrarily in revoking or sustaining the revocation of parole. The referee

found Bernal had such a hearing on January 18, 1972, before the review board and the action of the review board in revoking Bernal's release under supervision was not arbitrary or capricious.

We agree with the referee that for constitutional purposes "liberty under supervision" as used in sec. 48.51 (2), Stats., of the Children's Code is synonymous with "parole" as used in the criminal law. Thus the only question raised is what are the rights of a delinquent juvenile whose legal custody has been transferred to the department under sec. 48.34 (1) (d) 4, in respect to the proceeding revoking his liberty under supervision or "after care" as the professionals call it, for violation of conditions? We apply the *Johnson Case* to this question, excepting to hold a juvenile is entitled to counsel at the administrative revocation hearing. Since our decision in *Johnson,* the United States Court of Appeals for the Seventh Circuit decided in *Gunsolus v. Gagnon* (1971), 454 Fed. 2d 416, that retained counsel must be allowed to participate in the probation revocation hearing, and if the probationer is indigent, due process requires the appointment of counsel to assist at the revocation hearing. We are informed the department of health & social services follows the mandate of the Seventh Circuit in respect to revocation of adult probations. Since we see no essential constitutional difference between a parole of an adult and "liberty under supervision" of a juvenile, we believe the procedure should be uniform as far as practical, and we hold that as a matter of constitutional right a juvenile is entitled to retain counsel; and if he is an indigent, he is entitled to have the juvenile court in the county of his commitment appoint counsel upon his request to represent him at the revocation of his release to liberty under supervision. It may be that in some cases the state public defender will be appointed by this court to represent indigent juveniles. The hearing can be held wherever it is most convenient to the depart-

ment. We understand there are 61 offices in the state where such hearings could be held.

A juvenile is entitled prior to hearing to be advised of his rights and to a timely written statement and notice of the reasons his parole revocation was recommended. We understand there exists an informal present practice for the department now to bring the juvenile before a juvenile court where he disputes the fact he has violated the conditions of his "after care;" we think an administrative hearing would be logical in the interest of uniformity. At such a hearing, he also has a right to an effective opportunity to defend by presenting witnesses, by cross-examining any witnesses produced, and by presenting his arguments and evidence orally. The department may use written records and case histories, but if their accuracy is contested, they should be proved. [A transcript of the hearing should be made and kept for at least a reasonable period of time.] * The transcript should fully show in detail any waiver of rights. The juvenile should be told promptly of the board's decision and of its reasons and the evidence relied upon. A written record should be made of the decision. The hearing officer should be impartial and should not have participated directly or indirectly in the decision to terminate the parole if such determination has been made and is under review. Rather than the present system of a revocation by an officer of the department and an *ex parte* administrative review of this action by higher supervisors, the administrative process could be shortened by having the hearing prior to the revocation or immediately to review a tentative revocation by an officer of the department. Without these minimum standards, a hearing would not be fair or an adequate record would not be kept for judicial review purposes.

The referee's report points out the inadequacies in the hearing afforded Bernal but concludes none of his con-

---

* (See amendatory language in memorandum on motion for rehearing, post, p. 637.)

stitutional rights were violated; we disagree. The report points out no attempt was made to prove any arbitrariness or capriciousness in the board's action. But this may be because Bernal's petition for habeas corpus strikes at the denial of constitutional rights and this court had not yet applied the *Johnson Case* to juvenile cases.

This court prior to the reference heard the oral arguments of the parties and is now satisfied the petition must be granted.

*By the Court.*—Bernal is remanded to the department pending a hearing and the department of health & social services is hereby ordered to afford the petitioner a hearing on the revocation of his "liberty under supervision," represented by counsel, consistent with this opinion within a reasonable time or to release him under supervision.

CONNOR T. HANSEN, J. *(dissenting).* I respectfully dissent from the majority opinion of the court. In my opinion, the results it produces are contrary to the principles and concepts of the Children's Code (ch. 48 of the Wisconsin statutes); are not desirable; and are not dictated by either state or federal decisions. The majority cites no authority relating to juvenile court proceedings from any jurisdiction to support its conclusion. The rationale of the majority is founded upon two cases: *Gunsolus v. Gagnon* (7th Cir. 1971), 454 Fed. 2d 416; and *State ex rel. Johnson v. Cady* (1971), 50 Wis. 2d 540, 185 N. W. 2d 306. These two cases concern the revocation of parole or probation of an adult felon.

The instant case concerns the placement of a juvenile by the department of health & social services after a juvenile court has transferred the custody of a child to the department. In this writer's judgment, such a situation is not analogous to the revocation of probation or parole of an adult who has been convicted of a crime, and I do not believe the decisions of *Gunsolus* and *John-*

*son* are applicable to a change in placement in a child-custody case under the provisions of the Children's Code.

The custody of Bernal was transferred to the H&SS Department pursuant to the provisions of sec. 48.34 (1) (d) 4, Stats.

The significant point is that the juvenile was in custody before his adjudication of delinquency. Sec. 48.34 (1) (c), Stats., provides that the juvenile court may relieve the parent, guardian, or legal custodian of legal custody, and an alternative disposition available to the juvenile court is the transfer of the legal custody to the H&SS Department as was done in this case. It cannot be said that the adult criminal was in the custody of anybody prior to his lawful apprehension and I am unable to follow the rationale that makes placement in a custody case under the Children's Code comparable to the same constitutional standards and requirements as in adult criminal cases. Surely the juvenile has certain basic constitutional rights; [1] however, I do not believe that all of these rights must necessarily be founded upon standards established by court decisions in adult criminal cases.

The Children's Code contains detailed procedures to be followed once the juvenile court has made the decision to transfer the custody of the juvenile from his parents, guardian, or legal custodian to the H&SS Department. Upon making the decision to transfer legal custody, the provisions of sec. 48.34 (3) (a), Stats., become applicable. This section provides that all transfers of legal custody to the department under sec. 48.34 (1) (d) shall be until the age of twenty-one, unless the department discharges the child sooner under sec. 48.53.[2]

---

[1] *See In re Gault* (1967), 387 U. S. 1, 87 Sup. Ct. 1428, 18 L. Ed. 2d 527, concerning constitutional rights of a juvenile at preadjudicative juvenile court proceedings.

[2] This case does not concern the effect of ch. 213, Laws of 1971, effective March 23, 1972.

Sec. 48.50, Stats., directs the initial procedures to be followed by the department after the juvenile court has transferred legal custody of a child to the department, and provides as follows:

"48.50 **Examination of children in legal custody of department.** (1) The department shall examine all children whose legal custody is transferred to it by the court to determine the type of placement best suited to the child and, in the case of children who have violated a state law, to the protection of the public. This examination shall include an investigation of the personal and family history of the child and his environment and any physical or mental examinations considered necessary.

"(2) In making this examination the department may use any facilities, public or private, which offer aid to it in the determination of the correct placement for the child."

Sec. 48.51, Stats., then provides the type of care which the department may provide for a child placed in its legal custody:

"48.51 **Type of care.** (1) Depending on the results of the examination of the child, the department may place the child in any of the appropriate facilities described in s. 48.52.

"(2) In addition, if the child has been adjudged delinquent, the department may allow him his liberty under supervision either immediately or after a period in one of the facilities described in s. 48.52. If this is unsatisfactory in the judgment of the department, it may place the child in one of the facilities described in s. 48.52."

The provisions of sec. 48.51, Stats., coupled with those of sec. 48.52, provide a wide latitude of facilities and placements available to the department for the care and treatment of children in its legal custody. These available placements vary from supervision outside of a facility or institution to placement in an institution, and include, among other facilities, foster homes, group

homes, forestry and conservation camps, Wisconsin child center, and private facilities, should the needs of the child require specialized treatment of a nature not available in state facilities or institutions.

As I understand the record in this case, the petitioner, whose legal custody had been transferred to the department, was at liberty under supervision as provided in sec. 48.51 (2), Stats. Without attempting to define "liberty under supervision," the majority determines that for "constitutional purposes 'liberty under supervision' " as used in sec. 48.51 (2) is synonymous with "parole" as used in criminal law. I cannot agree. "Parole" is a term generally associated with adult penal procedures and as the term is generally understood and employed, it is completely foreign to the principles enunciated in the Children's Code. Is a juvenile to be considered at "liberty under supervision" if he has been placed in a foster home or group home, or does it depend upon his placement prior to being placed in a foster home or group home? However, in this case and in the judgment of the department, the arrangement for Bernal was unsatisfactory and the petitioner was placed in the Reception Center for Boys at Wales. While at the reception center, some plan is developed for the further placement of the child. His release from the reception center could involve a transfer to one of the state boys' schools, a foster home, a group home, the Wisconsin child center, a private facility, a forestry or conservation camp, allowing him his liberty under supervision in his own home, and other alternatives. The needs of a child during the period the department has legal custody may, and often do, vary from time to time, depending upon the development of the child and the capabilities and availability or lack of capabilities and availability of parents and relatives. It is entirely possible that several types of place-

ments by the department may be necessary before the one most compatible with the needs of the child is found. Also, the juvenile may need intermittent treatment at the Wisconsin child center. These judgments of the department as to proper placement of a child in its legal custody are the judgments of trained social workers and frequently include evaluations of psychologists and psychiatrists.

In my judgment, the holding of the majority cannot be restricted to the factual situation of the instant case. As a result of the holding of the majority, many questions present themselves. Suppose the petitioner had been placed in a foster home, group home, forestry camp or Wisconsin child center, instead of the reception center. Suppose the petitioner was in a group home or foster home and then placed in a forestry camp or one of the boys' schools or the Wisconsin child center. It seems to me that logic and consistency would dictate that the principles enunciated by the majority would apply to each of the above-mentioned situations and many other possible changes in placement dictated from time to time by the needs and best interests of the child. It is my considered opinion that to follow the procedure set forth by the majority will completely undermine the concept and intent of the Children's Code as set forth in sec. 48.01, Stats. The issue here presented goes to the very core of the rights, duties and privileges of the person (in this case the department) in whom legal custody of a child has been vested and the rights of a child. I do not believe these rights and obligations can properly be analogized with those of an adult who has been convicted and sentenced under the state criminal statutes.

The majority would also hold that the juvenile, if indigent, ". . . is entitled to have the juvenile court in the county of his commitment appoint counsel upon his request. . ." I do not see this as a desirable procedure.

Frequently, when an incident occurs precipitating a change in placement by the department, the juvenile is located a considerable distance from the court that made the original custody determination. It seems to me this requirement presents three alternatives, none of which, it is submitted, are satisfactory. The H&SS Department could return the juvenile to the county which made the original custody determination for the appointment of local counsel, or the juvenile court that made the determination could appoint local counsel and require him to go to the place the department designates as the place of hearing, or the juvenile court that made the custody transfer could appoint counsel in the county where the department decides to hold the hearing.

Furthermore, the majority opinion contains several statements of fact which I respectfully submit are not in the record.

I would deny the petition.

I am authorized to state that Mr. Justice BEILFUSS and Mr. Justice ROBERT W. HANSEN join in this dissent.

The following memorandum was filed June 8, 1972.

PER CURIAM *(on motion for rehearing)*. The motion for rehearing and to dismiss the case for mootness is denied without costs. The opinion, however, is amended to provide the transcript of the hearing need not be made unless there is a demand made for it for the purposes of review. The stenographic notes, tape, or other means of recording testimony should be kept for a reasonable period of time. Since the department no longer has custody of the petitioner, it may disregard the mandate.