STATE EX REL. CRESCI, Appellant, v. SCHMIDT, SECRETARY OF THE DEPARTMENT OF HEALTH & SOCIAL SERVICES, Respondent.*

*No. 151. Argued February 4, 1974.—Decided March 5, 1974.*
(Also reported in 215 N. W. 2d 361.)

* Motion for rehearing denied, without costs, on May 7, 1974.

402

For the appellant there was a brief by *James C. Wood* of Milwaukee, a reply brief by *Dennis Egre* and *James C. Wood & Associates,* all of Milwaukee, and oral argument by *James C. Wood.*

For the respondent the cause was argued by *Charles R. Larsen,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

A brief amicus curiae was filed by *David R. Clowers* of Milwaukee for Wisconsin Civil Liberties Union.

A brief amicus curiae was filed by *John F. Ebbott* of Milwaukee for Latin American Union for Civil Rights, Inc., and Felons and Community Together, Inc.

CONNOR T. HANSEN, J. On August 4, 1965, James T. Cresci was convicted in the circuit court for Milwaukee county of two counts of armed robbery, contrary to sec. 943.32, Stats. Cresci was sentenced to two terms of ten years each in the Wisconsin state prison for these crimes, the two sentences to run concurrently.

On December 22, 1970, Cresci was paroled on mandatory release and signed a standard parole agreement on this same date.

On June 19, 1971, Cresci was arrested in Milwaukee county for operating a motor vehicle without a driver's license and obstructing an officer.

On June 21, 1971, Bruce Larsen, Cresci's parole agent, interviewed Cresci at the Milwaukee County Jail and discussed the possibility of revocation. The next day, the parole hold on Cresci was released after Cresci signed an amended parole agreement. The amended agreement was identical to the original agreement except that it added the following additional conditions:

"7. I will not at any time operate a motor vehicle.

"8. I will not travel out of Milwaukee County without permission of my parole agent.

"9. I agree to a curfew of 12:00 p. m. on weekdays and 1:00 a. m. on Friday & Saturday Nights."

Three days later, on June 25, 1971, Cresci was arrested in Sheboygan with three friends, Mrs. Rachel Roman, Thomas Rosso, and Margaret Rose Langer, on charges of issuing worthless checks. At the time Cresci was arrested he had $700 in his possession. He claimed $500 of this sum had been given to him by his mother as bail for a brother who was in custody. The brother had escaped, hence the bail was not needed and he had not returned the money to his mother.

Larsen was subsequently notified of Cresci's arrest in Sheboygan and decided to recommend that Cresci's parole be revoked. Cresci requested a parole revocation hearing and Donald R. Schneider, hearing examiner, notified Cresci, by letter dated July 25, 1971, that a hearing had been set for July 30, 1971, which would determine whether there was cause for the revocation of his parole based upon the following reasons:

"1. You admitted to operating a vehicle without the advance permission of your supervising agent and without an operator's license and to giving a false name and producing another person's operator's license to a police officer on June 19, 1971;

"2. You admitted to traveling out of Milwaukee County to Sheboygan, Wisconsin, where you were ar-

rested on June 25, 1971, in direct violation of your amended parole agreement of June 22, 1971."

Larsen and Cresci both testified at the parole revocation hearing held before the hearing examiner, Schneider.

Larsen testified at the hearing that he had not given Cresci permission to leave Milwaukee county after he had signed the parole agreement in which he had agreed not to leave without permission. Cresci admitted that he left Milwaukee without permission, but claimed that he had been driving around on the morning of June 25th with his three other friends when he fell asleep in the back seat of the car, and when he was awakened he discovered that they had driven to Sheboygan. They were going to return to Milwaukee but decided to stop and eat first. They were arrested on the check charge as they were leaving the restaurant.

Roman, Rosso and Langer all submitted affidavits, and also testified at the hearing, that Cresci was not involved in the passing of bad checks in Sheboygan. Counsel for Cresci, on this appeal, argues that this check charge against Cresci has been dismissed.

Cresci testified that when Roman, Rosso and Langer came to his house on the morning of June 25th, at about 10 or 11 o'clock a. m., they asked him if he ". . . wanted to go riding around." Cresci said he thought they meant riding around town and did not realize they meant leaving town.

Roman, Rosso and Langer all testified that Cresci had slept all the way to Sheboygan. Rosso had driven a car which was rented from *Budget* rental and they claimed that they did not know of the territorial restriction in Cresci's parole agreement. Rosso also testified that when they went to Cresci's house that morning, Cresci appeared tired. Cresci further testified he had done some heavy drinking the previous evening.

Langer testified that the group had plans that morning of going to Sheboygan, but that Cresci had no idea of

what they were going to do and had fallen asleep in the car.

At the conclusion of the hearing, the examiner filed a synopsis of testimony with findings of fact and his recommendation. The examiner found that the bureau had established and proven its allegations. The examiner also found that ". . . the parolee and his witnesses' credibility is subject to severe suspicion," and that the action of the bureau was neither capricious nor arbitrary. The examiner recommended revocation. A formal revocation order was subsequently issued by the secretary of the Department of Health & Social Services.

On September 3, 1971, Cresci sought review of this decision by certiorari in Milwaukee circuit court. On October 20, 1971, the action taken by the department in revoking parole was found to be neither arbitrary nor capricious by the circuit court.

It also appears that subsequent to the parole revocation, which is the subject of this appeal, Cresci was again paroled. While thus on parole, he was arrested and convicted of robbery and sentenced to a term of ten years, to run concurrent with the sentence upon which he had been paroled.

The issues raised on this appeal are as follows:

1. Whether the department's revocation of Cresci's parole was arbitrary or capricious?

2. Whether Cresci was improperly denied his right to the assistance of counsel at his parole revocation hearing?

### Revocation.

In *State ex rel. Johnson v. Cady* (1971), 50 Wis. 2d 540, 547, 185 N. W. 2d 306, it was determined that although there was no statutory right to a parole revocation hearing:

". . . the basic requirements of due process and fairness require that the department provide a limited hearing to allow petitioners to be confronted with their probation violation and to be heard if they so desire. . . ."

*Johnson* further considered the basic requirements of due process at such a hearing and the record required of such a hearing. Subsequently, in *Morrissey v. Brewer* (1972), 408 U. S. 471, 92 Sup. Ct. 2593, 33 L. Ed. 2d 484, the United States Supreme Court determined that the due process clause of the fourteenth amendment required that the state afford an individual an opportunity to be heard prior to revocation of his parole and stated, at page 480:

"We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. . . ."

In discussing the various stages of a parole revocation, the United States Supreme Court emphasized that there was no thought to equate the actual parole revocation hearing to a criminal prosecution in any sense. Thus, having determined that due process applies to parole revocation proceedings, "the question remains what process is due?" *Morrissey v. Brewer, supra,* page 481. In answering this question, it was determined that the minimum requirements of due process include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) ; (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement

by the fact-finders as to the evidence relied on and the reasons for revoking parole.

In *State ex rel. Johnson v. Cady, supra,* page 550, it was held that review of the revocation hearing could be obtained by certiorari issued by the court of conviction, and stated:

". . . We further conclude that the scope of the review shall be addressed to whether the department's action was arbitrary and capricious and represented its will and not its judgment.

" 'The board is presumed to have had before it information which warranted the order of revocation, and its determination of the matter is conclusive unless the prisoner can prove by a preponderance of the evidence the board's action was arbitrary and capricious. That burden rests squarely on the prisoner, and if he fails to sustain the burden, the courts will not interfere with the board's decision. . . .' "

At the parole revocation hearing, Cresci admitted that when arrested for the traffic violation on June 19, 1971, he gave the police officer a false name and address and that he had altered the driver's license he was using at the time. However, the record reflects that in recommendation for revocation, the examiner placed strong emphasis on the Sheboygan episode. Cresci also admitted that he left Milwaukee county without his parole agent's knowledge or consent and went to Sheyboygan with his friends on June 25, 1971. It was impossible for him to deny this because he was arrested in Sheboygan the same day. It was necessary for the examiner to pass upon the credibility of the witnesses, and he specifically addressed himself to the subject. In performing this responsibility, the examiner rejected the testimony of Cresci and his witnesses to the effect that Cresci had not known on June 25, 1971, that the party intended to go from Milwaukee to Sheyboygan until after they arrived in Sheboygan.

We have examined the record and the rejection of the testimony of Cresci and his witnesses was not arbitrary nor capricious. We, therefore, conclude that as to the grounds for revocation of parole and the procedure followed in so doing, the mandate of both *State ex rel. Johnson v. Cady, supra,* and *Morrissey v. Brewer, supra,* were substantially followed and the defendant has not met his burden of proving that the decision to revoke was arbitrary or capricious.

### *Right to counsel.*

There remains to be considered the issue of whether Cresci was improperly denied his right to the assistance of counsel at his parole revocation hearing.

Examiner Schneider, prior to the hearing, stated that neither Cresci nor the bureau of probation and parole would be entitled to have the assistance of counsel at the hearing. Shortly thereafter, Raymond Porter, a lawyer who appeared with Cresci at the hearing, asked to be present to represent Cresci. Porter agreed to abide by the examiner's decision as to his participation and was permitted to remain. It does not appear from the record that Porter ever attempted to say or do anything which the examiner prohibited. Rather, it appears that Porter and the examiner agreed that Porter would be an inactive participant. When Porter attempted to make a point or be heard, he was allowed to do so. However, Cresci, for the most part, questioned the witnesses on his own behalf.

The decision that counsel could not participate was undoubtedly based upon the ruling of this court in *State ex rel. Johnson v. Cady.* In *Johnson, supra,* page 554, we followed the majority of courts and limited *Mempa v. Rhay* (1967), 389 U. S. 128, 88 Sup. Ct. 254, 19 L. Ed. 2d 336, to its particular facts, stating:

"However, the majority of courts considered *Mempa* to apply to its factual context, and thus not to require counsel at a parole or probation revocation hearing. We here adopt the holdings of the majority and determine that the presence of counsel at the revocation hearing is not required."

Subsequent to our decision in *Johnson,* the United States Court of Appeals for the Seventh Circuit considered the matter of revocation of adult probation in four consolidated appeals. *Gunsolus v. Gagnon; Fink & Hoppe v. Cady;* and *Scarpelli v. Gagnon* (1971), 454 Fed. 2d 416. In these cases, it was decided that retained counsel must be allowed to participate in probation revocation hearing and, if probationer is indigent, due process required appointment of counsel to assist at a revocation hearing. The United States Supreme Court granted certiorari in *Scarpelli. Gagnon v. Scarpelli* (1973), 411 U. S. 778, 93 Sup. Ct. 1756, 36 L. Ed. 2d 656.

In the time between the decision of the Court of Appeals in the four cases, which we here identify as *Gunsolus v. Gagnon* and that of the United States Supreme Court in *Scarpelli,* we decided *State ex rel. Bernal v. Hershman* (1972), 54 Wis. 2d 626, 196 N. W. 2d 721, and *Oestrich v. State* (1972), 55 Wis. 2d 222, 198 N. W. 2d 664.

In *State ex rel. Bernal v. Hershman, supra,* it was determined that a juvenile had a right to counsel at a proceeding to revoke his liberty under supervision after he had been found delinquent and his custody transferred to the Department of Health & Social Services pursuant to the provisions of the Children's Code (ch. 48, Wisconsin statutes).[1]

---

[1] In *Gagnon v. Scarpelli, supra,* page 789, footnote 12, it was stated: ". . . A juvenile charged with violation of a generally applicable statute is differently situated from an already-convicted probationer or parolee, and is entitled to a higher degree of protection. . . ." Therefore, we do not withdraw any of the language in *Bernal,* or in any way modify its holding.

In *Oestrich v. State, supra,* we held an adult probationer was entitled to representation by counsel at a probation revocation hearing in a deferred sentencing situation. We arrived at this conclusion not on the basis of an independent judgment or policy decision, but primarily in the interest of federal-state relationship, and because of the decision of the United States Court of Appeals for the Seventh Circuit in *Gunsolus v. Gagnon, supra.*

Since the *Gunsolus* decision, the United States Supreme Court has decided *Gagnon v. Scarpelli, supra. Scarpelli* held that the state was not under a constitutional duty to provide counsel for all indigents in all probation revocation cases. In *Scarpelli,* the court stated:

"These requirements [hearing requirements of *Morrissey v. Brewer, supra*] in themselves serve as substantial protection against ill-considered revocation, and petitioner argues that counsel need never be supplied. What this argument overlooks is that the effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess. Despite the informal nature of the proceedings and the absence of technical rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence.

"By the same token, we think that the Court of Appeals erred in accepting respondent's contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel. In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him. And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating

evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel." *Gagnon v. Scarpelli, supra,* pages 786, 787.

*Scarpelli* further held that due process is not so rigid as to require that the significant interests of informality, flexibility, and economy, must always be sacrificed. It was further determined in *Scarpelli, supra,* page 790, "that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." The United States Supreme Court did not attempt to set forth specific guidelines for the state authority to follow in determining whether or not to provide counsel, but did prescribe definite factors that must be considered and certain procedure that must be followed in the following language:

"It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be

capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record." *Gagnon v. Scarpelli, supra,* pages 790, 791.

Petitioner argues that *Oestrich v. State, supra,* does not specifically state whether the decision was based upon state or federal constitutional grounds. However, *Oestrich* was the direct result of the decision in *Gunsolus v. Gagnon, supra.* Furthermore, it has been stated many times that art. I, sec. 7, of the Wisconsin Constitution relating to due process and the right to counsel, are substantially the same as corresponding provisions in the United States Constitution. "It is, of course, within the power of this court to apply higher constitutional standards than those that are required of states by the federal constitution." *State v. Taylor* (1973), 60 Wis. 2d 506, 522, 210 N. W. 2d 873. *Taylor* cites several cases in which we have so imposed a higher standard. However, since the declaration of a constitutional right to counsel at all probation and parole revocation hearings enunciated in *Oestrich* was based upon the holding of *Gunsolus* which has now been overruled by *Gagnon v. Scarpelli, supra,* the language of *Oestrich* to that effect is withdrawn. Henceforth, the right to counsel at probation and parole revocation hearings will be determined on a case-by-case basis consistent with the mandate of *Scarpelli.*

In arriving at this decision, we recognize that *Scarpelli* concerned the right of an indigent to be represented by counsel at such hearings. In the instant case, the precise issue is the right to retain counsel to appear at these hearings and *Scarpelli,* footnote 6, page 783, expressly did not consider this issue. We are unable to discern any valid reason why retained counsel should always be permitted to participate in hearings whereas

representation for an indigent would be subject to the rule of *Scarpelli, supra*. It is our opinion that if we were to sanction such a result, it would be violative of the equal protection clause of both the state and federal constitutions. It has been held that art. I, sec. 1 of the Wisconsin Constitution is substantially equivalent of the due-process and equal-protection clauses of the fourteenth amendment to the United States Constitution. *State ex rel. Sonneborn v. Sylvester* (1965), 26 Wis. 2d 43, 49, 132 N. W. 2d 249.

The extent to which either retained or appointed counsel participate in probation and parole revocation hearings must be the result of a determination of the hearing agency on a case-by-case basis and such determination must be based upon the exercise of sound discretion. In the event a request for counsel or participation by retained counsel is refused, the grounds for such refusal should be stated succinctly in the record. We would further hold that if retained counsel does participate in the hearing, such participation should also be based upon the exercise of sound discretion by the hearing agency and the reasons therefore set forth in the record.

In the instant case, the examiner did not exercise any discretion in determining that neither petitioner nor the bureau of probation and parole would be entitled to have assistance of counsel at the hearing. As previously stated, under the then existing rule of *State ex rel. Johnson v. Cady, supra,* he was not required to do so. We observe that the hearing in this case was held prior to the decisions in *Gunsolus v. Gagnon, supra,* and *Oestrich v. State, supra.*

From our examination of the record, we conclude that in this case the rights of the petitioner were in no way prejudiced by this determination of the examiner. Witnesses Roman, Rosso and Langer, who testified in

behalf of the petitioner, also submitted sworn affidavits. Essentially, their testimony conformed to the contents of their respective affidavits, each of which was acknowledged on July 4, 1971, before Raymond C. Porter, who appears to be the lawyer present at the hearing in behalf of Cresci. Cresci admitted violating the terms of the parole agreement. The defense he attempted to establish was not ". . . complex or otherwise difficult to develop or present." The issue before the examiner was one of credibility. We are of the opinion that the record adequately supports his determination.

Since we have limited *State ex rel. Bernal v. Hershman, supra,* to juvenile proceedings under ch. 48, Stats., and withdrawn the language in *Oestrich v. State, supra,* it is not necessary to consider the issue of retroactivity raised by petitioner.

*By the Court.*—Judgment affirmed.

HALLOWS, C. J. *(dissenting).* Since the "hearing agency" as used by the majority is a hearing officer and employee of the Department of Health & Social Services, he is not the most impartial person to decide whether the parolee may be represented by counsel. I would construe our Wisconsin Constitution as granting a parolee the right of representation at the administrative level. An attorney on certiorari comes too late.

I am authorized to state that Mr. Justice WILKIE joins in this dissent.

HEFFERNAN, J. *(dissenting).* I would reverse. While the court's opinion pays lip service to *Gagnon v. Scarpelli* (1973), 411 U. S. 778, 93 Sup. Ct. 1756, 36 L. Ed. 2d 656, it ignores its rationale. A reasonable reading of *Scarpelli* demonstrates that the hearing may proceed without counsel only in those cases where the historical facts of the parole violation are undisputed.

*Scarpelli* emphasizes that the question of counsel in a revocation hearing is to be approached on a case-by-case

basis. *Scarpelli,* page 790. Instances are referred to therein where not only is there the right to appear by retained counsel, but when there is a finding of indigency, the state must provide counsel.

"Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record." *Gagnon v. Scarpelli, supra,* pages 790, 791.

The majority opinion finds that the examiner did not exercise discretion in denying the right of retained counsel to participate. The failure to exercise discretion when it is required, as it is by *Scarpelli,* is, under Wisconsin law, an abuse of discretion. *McCleary v. State* (1971), 49 Wis. 2d 263, 282, 182 N. W. 2d 512.

Cresci raised an issue which went to the fact-finding procedure, *i.e.,* did he intentionally violate the conditions of his parole, or was the technical violation unknown to him and beyond his control. When this situation was posed, it was incumbent upon the examiner to exercise his administrative discretion and explain on the record his decision to deny counsel.

Contrary to the *Scarpelli* rule, Cresci was arbitrarily denied the right to counsel in a fact-finding procedure. Right to counsel is fully retroactive under the sixth

amendment. *(See Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799, 93 A. L. R. 2d 733, and the right-of-counsel cases that follow.)

Where there is a constitutional right to counsel, a defendant is entitled to a fully retroactive application, even though here the examiner denying the right was not aware of the rule that he could not deny counsel without a demonstrated exercise of discretion.

The right to counsel is a constitutional one affecting the integrity of the fact-finding process. Neither this court, nor any other court, can "sunburst" the constitution. The effect of the constitution in respect to the right of counsel is fully retroactive, and *Scarpelli* applies to this case. The judgment must be reversed.

I am authorized to state that Mr. Chief Justice HALLOWS and Mr. Justice WILKIE join in this dissent.