IN RE G.G.D., a minor, Appellant-Petitioner,

v.

STATE of Wisconsin, Respondent.

Supreme Court

*No. 78–212. Argued May 5, 1980.—Decided June 9, 1980.*
(Also reported in 292 N.W.2d 853.)

For the appellant-petitioner there were briefs and oral argument by *Paula K. Lorant,* of Milwaukee.

For the respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   G. G. D., a minor, seeks a review of a decision of the court of appeals[1] summarily affirming an

---

[1] Dated February 15, 1979. The court of appeals, after examining the record, concluded that there was no prejudicial error to G.G.D.

order of the county court of Milwaukee County, Children's Division, remanding his custody to the Department of Health and Social Services, Division of Corrections for placement at the Wisconsin School for Boys at Wales.

The relevant issues on review are:

1. May a juvenile's probation be revoked for violations of the conditions and restrictions placed on his liberty, when he was not informed of those conditions and the conditions were of a non-criminal nature? and,

2. Did the juvenile court abuse its discretion in revoking G.G.D.'s probation and remanding his custody to the Department of Health and Social Services, Division of Corrections?

We conclude that G.G.D. was entitled to notice of the conditions of his probation and that the trial court abused its discretion in revoking his probation.

On January 20, 1978, G.G.D., who was then fourteen years old, was found to be both delinquent and dependent. Pursuant to the delinquency adjudication, G.G.D.'s custody was ordered transferred to the Department of Health and Social Services, Division of Corrections. The juvenile court, the Honorable Michael J. Goulee, county judge, however, stayed the execution of this order and placed him under the supervision[2] of the Milwaukee

[2] The term used in the juvenile justice system for probation is actually supervision, however, for purposes of clarity and consistent with the terminology used by the parties in this action, and the court in previous cases, we will continue to use the term "probation" to refer to such supervision. For a detailed explanation of the use of probation as a means of disposition in juvenile court cases, *see, Wisconsin Juvenile Court Practice*, §11.5 at 193–195 (Youth Policy & Law Center, 1978). The Children's Code itself uses the terms interchangeably in various sections. *See,* secs. 48.991, 48.28(1)(f), 48.34(1)(b), Stats. 1975. The juvenile justice system has both its own language and procedures. A rough comparison of the procedures used in the juvenile system to those analogous procedures in the adult setting has been made as follows:

County Children's Probation Department for the period of one year. Relative to the dependency adjudication, G.G.D.'s custody was ordered transferred to the Milwaukee County Department of Public Welfare for two years.

On April 5, 1978, a petition was filed with the court by G.G.D.'s probation officer alleging that he violated the terms of his probation. Five grounds were alleged as a basis for revoking the probationary status of G.G.D. These grounds were that: (1) he had traveled to the state of Florida without permission on two separate occasions; (2) he refused to cooperate with his caseworker from the Milwaukee County Department of Public Welfare in preplacement at the Ladd Lake Residential Facility; (3) his placement in both of his grandparents' homes terminated because of his refusal to comply with curfew and other rules of either home; (4) he refused to be placed in the "Children's Home;" and (5) he refused to cooperate in any placement plan and was unavailable for "service" due to his repeated runaways.

A hearing on this petition was held before Judge Goulee on April 25, 1978. At that hearing, G.G.D.'s probation officer testified that he had neither orally counseled G.G.D. on the terms of his probation, nor explained these rules to him in writing. This testimony was consistent with that given by G.G.D. who testified that no one dis-

"Police do not arrest juveniles; they take them into custody. Juveniles are not charged with crimes; they are alleged to be delinquent. Juveniles are not jailed; they are detained. They are not put in jail; they are placed in secure detention. A juvenile alleged to be delinquent is a respondent, not a defendant. There is no conviction in the juvenile system; there is an adjudication. The decision as to how to treat a juvenile adjudicated delinquent is called disposition, not sentencing. Juveniles are not sentenced to prison; they are committed to a juvenile school. They are not placed on probation, but under supervision. They are not paroled; they are placed on after care." *Wisconsin Juvenile Court Practice*, §1.09 at 11 (Youth Policy & Law Center, 1978).

cussed the terms of his probation with him and that at no time was he given a document containing the terms of his probation. After the juvenile court received all of the testimony at the hearing, G.G.D.'s attorney moved for dismissal of the petition on the grounds that revocation would violate the juvenile's Fourteenth Amendment right to due process, citing the failure to give prior notice of the terms of probation. While the court denied this motion, it stated that it would not take into consideration the trips to Florida in reaching a decision because G.G.D. had not been given notice that the trips would violate his probation. The juvenile court then found that G.G.D. had breached the terms of his probation by violating the "trust" of the court. When counsel for G.G.D. requested a more specific enumeration of the grounds upon which the revocation was based, the court noted the following violations: "The runaways, the noncooperation with placement, knowing that a capias[3] was outstanding against him and his failure to appear here, his general lack of cooperation with the authorities in the court's original placement." The proceedings were then adjourned until May 30, 1978, so that a disposition study could be prepared to recommend an appropriate treatment facility for G.G.D.

Following this hearing, on May 28, 1978, the juvenile court was informed that G.G.D. had absconded and a capias was ordered to issue. G.G.D. appeared in court on June 5, 1978. As a result of his absence, the disposition study had not been completed. The court indicated at that point that it would proceed to disposition without completion of the study. After counsel for G.G.D. renewed her due process objection to the revocation of his probation, the court initiated consideration of conduct of G.G.D. occurring subsequently to the April 25, 1978, hearing where it had been found he had violated his

[3] Secs. 48.23, 48.25, Stats. 1975.

probation. G.G.D.'s counsel objected to the considera-
tion of these new matters, and on the basis of this objec-
tion, the case was adjourned and G.G.D. was placed in
detention awaiting a formal hearing on the new allega-
tions. However, it does not appear in the record that
the new allegations were ever formally charged. Upon
the application of G.G.D., the Honorable Michael P. Sul-
livan, circuit judge, ordered the discharge of G.G.D.
from the Milwaukee County Detention Home and or-
dered his placement at the Milwaukee County Children's
Home.

On July 28, 1978, G.G.D. again appeared in court, this
time before the Honorable John A. Walsh, reserve cir-
cuit judge, presiding. G.G.D. indicated his willingness
to proceed to disposition, stating that he would rather
be sent to the Wisconsin School for Boys at Wales at
that time so that he could "get it over with." His coun-
sel then renewed her objection to the propriety of the
probation revocation proceedings. After noting the ob-
jection, the court ordered G.G.D.'s custody to be trans-
ferred to the Department of Health and Social Services,
Division of Corrections.

*1. MAY A JUVENILE'S PROBATION BE RE-
VOKED FOR VIOLATIONS OF THE CONDITIONS
AND RESTRICTIONS PLACED ON HIS LIBER-
TY, WHEN HE WAS NOT INFORMED OF THOSE
CONDITIONS AND THE CONDITIONS WERE OF
A NONCRIMINAL NATURE?*

The state agrees that a juvenile who is placed on pro-
bation is entitled to notice of the conditions of his pro-
bation. However, the question of whether a juvenile is
entitled to prior notice of the conditions of his proba-
tion before probation may be revoked is a matter of
first impression in this jurisdiction. Consequently, we
analyze whether notice must be given and if so, the form
and extent of the notice required.

The question is presented in terms of whether G.G.D. is entitled under the Fourteenth Amendment due process clause[4] to prior notice of the conditions which would lead to a revocation of his probation. We have not been cited, and we have not found a provision in the Children's Code, Chapter 48, effective at the time this case arose, that required a juvenile be given notice of the conditions of his probation.[5] It has been held, independently of any constitutional requirement, that it is an abuse of the discretion of the authority responsible for probation revocation to revoke probation based on a condition of a noncriminal nature, where the individual was not given prior notice that violation of the condition would lead to a loss of liberty. *United States v. Foster,* 500 F.2d 1241 (9th Cir. 1974). We conclude

---

[4] United States Constitution, amendment XIV, §1, provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Wisconsin Constitution also provides that due process is guaranteed in criminal cases. Wisconsin Constitution, Article I, sec. 8, provides:

"No person shall be held to answer for a criminal offense without due process of law, and no person for the same offense shall be put twice in jeopardy of punishment, nor shall be compelled in any criminal case to be a witness against himself. All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great; and the privilege of the writ of habeas corpus shall not be suspended unless when, in cases of rebellion or invasion, the public safety may require it."

[5] Although the statutes did refer to home supervision under conditions prescribed by the court, there existed no explicit provision requiring notice of the conditions be given to the juvenile. *See,* secs. 48.34(1)(b), 48.345(2), Stats. 1975.

there is a more fundamental due process right to adequate notice of the conditions upon which the revocation of probation may be premised.

The basis for determining whether the treatment of juveniles in the adjudicatory and dispositional phases of a delinquency proceeding meets the requirements of due process is whether the procedure is fundamentally fair. *McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1971). Even in those cases involving adults, the probation revocation proceeding is not a stage of the criminal prosecution to which the full panoply of procedural protections apply. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Still, there results a substantial loss of liberty when probation is revoked and therefore, a probationer is entitled to certain procedural protections before this liberty interest may be denied.

Just as the principles of due process and fair play apply in parole revocation proceedings, *Snajder v. State*, 74 Wis.2d 303, 313, 246 N.W.2d 665 (1976), so too do they apply to probation revocation proceedings. *See, Gagnon v. Scarpelli*, 411 U.S. 778 (1973). This court has likewise held that there is ". . . no essential constitutional difference between a parole of an adult and 'liberty under supervision' of a juvenile. . . ." *State ex rel. Bernal v. Hershman*, 54 Wis.2d 626, 630, 196 N.W.2d 721 (1972). Neither are there sufficient constitutional differences between the revocation of a juvenile's "supervision" and the revocation of an adult's probation to warrant divergent standards regarding notice. In *State ex rel. Bernal*, 54 Wis.2d at 630, this court stated that when there is no essential constitutional difference between the status of adults and juveniles in the criminal justice system, the procedures should be uniform so far as is practical. There is no reason in policy or practice

to warrant the application of a lesser standard of notice to juveniles on probation than is granted to adult probationers. The juvenile suffers a loss of liberty and therefore is entitled to certain due process rights before he may be deprived of his liberty. *See generally, In re Gault,* 387 U.S. 1 (1967) ; *In re Winship,* 397 U.S. 358 (1970).

The assertion that the safeguards of due process apply, does not resolve the question of what process is due. Once probation has been granted ". . . this conditional liberty can be forfeited only by breaching the conditions of probation." *State v. Tarrell,* 74 Wis.2d 647, 653–654, 247 N.W.2d 696 (1976). The fact that the juvenile's liberty hinges upon his compliance with conditions which are not applicable to the public at large or other juveniles,[6] renders the sufficiency of notice of these conditions crucial to the basic fairness of the system. When the juvenile authorities allege that a condition of probation has been violated, a basic requirement to insure "fundamental fairness" in the system must be that the juvenile has been given some warning in advance that particular conduct could lead to the revocation of probation. Just as there is an essential requirement that a criminal statute give fair warning of the conduct subject to punishment, *Bouie v. City Of Columbia,* 378 U.S. 347, 350 (1964), so too must a probationer be given "some fair warning" of the conditions upon which his

---

[6] We do not reach in this case whether all the restrictions imposed on the juvenile were valid conditions or more specifically whether the juvenile court can require as a condition of probation that a child cooperate with placement attempts made pursuant to a dependency disposition. On this general subject see, Note, *Judicial Review Of Probation Conditions,* 67 Colum. L. Rev. 181 (1967) ; J. Best & P. Birzon, *Conditions Of Probation: An Analysis,* 51 Geo. L.J. 809 (1963) ; *Cf., United States v. Tonry,* 605 F.2d 144 (5th Cir. 1979). *See, also,* sec. 48.34(2), Stats. 1977.

continued right to probation depends. "It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. . . . This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation." *United States v. Dane,* 570 F.2d 840, 843 (9th Cir. 1977) *cert. denied,* 436 U.S. 959 (1978).

Under the recently revised Children's Code,[7] it is now required that when a child is adjudged delinquent, he may be placed under the supervision of an agency or the Department of Health and Social Services with ". . . conditions prescribed by the judge including reasonable rules for the child's conduct and the conduct of the child's parent, guardian or legal custodian, designed for the physical, mental and moral well-being and behavior of the child." Sec. 48.34(2), Stats. 1977. Although not explicitly provided for, we think that along with the duty to prescribe conditions comes the corresponding requirement that the juvenile receive notice of those conditions, either from the judge himself or the agency in charge of supervision. Nevertheless, it should be emphasized that certain conditions of probation are so basic that knowledge of them will be imputed to the probationer. Knowledge of the criminal law is one such condition. *Tiitsman v. Black,* 536 F.2d 678, 681–682 (6th Cir. 1976). At the revocation proceeding G.G.D. acknowledged that he knew he could not violate the law and remain on probation.

G.G.D.'s probation was revoked for noncriminal activity. In this situation the liberty of the probationer cannot be forfeited unless fair warning has been given to him. When probation is revoked based on a condition not formally given, the record must be closely examined to determine whether adequate notice was given

---

[7] Chapter 354, Laws of 1977, Section 57r, effective November 18, 1978.

to constitute fair warning. "We have repudiated the concept that the state's interest in the welfare of children allows it to play fast and loose with their constitutional right of due process." *Rusecki v. State,* 56 Wis. 2d 299, 319, 201 N.W.2d 832 (1972). (Heffernan, J., concurring).

**2. *DID THE JUVENILE COURT ABUSE ITS DISCRETION IN REVOKING G.G.D.'s PROBATION AND REMANDING HIS CUSTODY TO THE DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF CORRECTIONS?***

The state, acknowledging that G.G.D. was entitled to a list of conditions of his probation, asserts that the juvenile had actual notice that cooperation with the caseworker from the Milwaukee County Department of Public Welfare was a condition of his probation. The juvenile court orally found that the juvenile "violated that trust the court placed him in [sic] through his manipulation, and continues to be a danger to himself and others; and I will find that he has violated his probation. It was clear to him that he had a special status at that time and that he would have to cooperate."

The only arguable support in the record for the above finding cited by the state is the following colloquy between the judge and the juvenile:

"*Q.* All right. What did you think of when you were placed on probation? What did you think you were supposed to do?
"*A.* I don't know.
"*Q.* You were placed on a stay of commitment. That means I sent you to the Boy's School but held you back. What do you mean you don't know?
"*A.* On probation?
"*Q.* Right.
"*A.* Just thought that, you know, if I broke the law I would be put away.

"Q. You can do anything else you wanted to?

"A. Well, no; but doing the things I did do, I was told to do.

"Q. You are talking about going to Florida, but not then cooperating with placement by Mr. Parsons?

"A. That, well—

"Q. Isn't it a fact that everything—you wanted everything your way; right?

"A. Well, I would like it that way; but it's not that—everything."

From this excerpt, and our independent examination of the record, we cannot perceive any basis for the finding that the juvenile knew that he was required to cooperate with placement or his probation would be revoked.

We do not determine whether in fact G.G.D. failed to cooperate. We merely determine that the juvenile court's finding that G.G.D. knew that his continued status as a probationer depended on his cooperation with the authorities, was against the great weight and clear preponderance of the evidence. This is the appropriate standard of review on appeals involving determinations of fact made by the juvenile court.[8] *In re Interest Of J.K., (a minor)*, 68 Wis.2d 426, 434, 228 N.W.2d 713 (1975); see, *Termination Of Parental Rights To Kegel*, 85 Wis.2d 574, 271 N.W.2d 114 (1978). Applying this standard, we overturn the juvenile court's finding that G.G.D. had known that he was to cooperate with his caseworker upon pain of probation revocation. While G.G.D.'s statement would be consistent with a finding

---

[8] The state erroneously assumes that the appropriate standard of review is whether the decision is "arbitrary and capricious," which is the standard employed by this Court when review is made by a writ of certiorari of a determination of the Department of Health & Social Services in adult probation and parole revocation proceedings. *See, e.g., State ex rel. Johnson v. Cady*, 50 Wis.2d 540, 550, 185 N.W.2d 306 (1971).

that he knew he could not violate the law, knowledge which as noted earlier, would in any event be imputed to him, G.G.D. cannot be said to have had prior fair warning that his cooperation with his caseworker was a condition of his probation. Given the lack of notice, the revocation of G.G.D.'s probation violated his right to due process of law. Thus, revocation in this instance would be an abuse of the discretion of the juvenile court, since the court's discretion is necessarily limited by the requirement that the decision be consonant with the purposes of established law. *See, State ex rel. Plotkin v. H&SS Department,* 63 Wis.2d 535, 217 N.W.2d 641 (1974) ; *In re Interest of J.K. (a minor),* 68 Wis.2d at 434.

Although the noncooperation of G.G.D. has been the principal finding contested here, the juvenile court stated that an alternative basis for revoking probation was to be found in G.G.D.'s knowledge that a capias was outstanding and his failure to appear in court. The record of the April 25, 1978 hearing reveals that two capiases were issued. One was issued to place G.G.D. in detention for twenty-one days immediately prior to the hearing. Nothing in the record indicates that G.G.D. knew this capias was outstanding or that he failed to appear at any time. The second capias mentioned at the hearing was issued in connection with one of the Florida trips. G.G.D. testified that he knew the capias was outstanding but he did what his aunt and father told him to, and he therefore went to Florida. In light of the juvenile court's express disavowal of any reliance on the trips to Florida, we do not find any basis in the record for revoking probation on this ground. The juvenile court also asserted that G.G.D.'s runaways violated his probation. Without questioning whether G.G.D. did in fact run away we believe that this ground is so closely related to his cooperation that under our prior analysis,

he was entitled to be given notice of this condition[9] and on the record it is clear that he did not have notice.

The state also contends that an additional ground supporting the juvenile court's decision to probation was to be found in G.G.D.'s escapes from custody following the April 25, 1978 hearing when he was first found in violation of his probation. While the juvenile court judge did initiate consideration of this conduct during the May 5, 1978 hearing, upon objection by G.G.D.'s counsel, the case was adjourned and G.G.D. was placed in detention to await a formal hearing. However, there is no indication that G.G.D. was formally charged with these alleged violations. At G.G.D.'s final disposition hearing, on July 28, 1978, he advised the court that he was willing to dispense with the revocation hearing, and that he would proceed to disposition on the basis of the juvenile court's original determination that he was in violation of his probation. Again at this hearing, G.G.D.'s counsel renewed her objection relative to the procedures used to arrive at the original determination.

The state argues that G.G.D.'s willingness to proceed to disposition upon the juvenile court's original determination that he had violated the terms of his probation, should serve as a waiver of the need both for filing a petition with the juvenile court, listing those allegations, and the adjudication of these allegations. Our reading of the record indicates that neither party at this time considered this hearing to be anything more than the last roadblock keeping G.G.D. from the Wisconsin School For Boys at Wales, a fate which G.G.D. had determined was his no matter the disposition of the later charges. The renewal by G.G.D.'s counsel of her due process ob-

---

[9] The juvenile court at the outset of the hearing stated that it would consider G.G.D.'s dual status in making its determination whether to revoke probation. When the disposition was made, there was no reference to G.G.D.'s dual status. We, therefore, do not address the scope of the dispositional powers vested in the juvenile court in regard to G.G.D.'s dependency status.

jection bears this out. This objection would be futile if G.G.D. was waiving his right to a hearing on additional charges which would provide an independent basis for the probation revocation decision. Because no waiver occurred it is our determination that G.G.D.'s escapes from custody after the initial probation revocation decision were not properly before the juvenile court for consideration and could not form the basis for its decision.

Based on our resolution of the preceding issues, it is not necessary to address other issues raised by the parties. We, therefore, conclude that the juvenile court erred in revoking G.G.D.'s liberty.

*By the Court.*—The decision of the court of appeals is reversed. The order of the county court revoking probation is vacated and cause remanded to the circuit court for further proceedings not inconsistent with this opinion.