STATE of Wisconsin,
Plaintiff-Respondent,

v.

James W. SMITH,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2008AP1011-CR. Oral argument September 15, 2009.
—Decided March 19, 2010.*

2010 WI 16

(Also reported in 780 N.W.2d 90.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Shelley M. Fite,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Rebecca Rapp St. John,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals,[1] which affirmed the decision of the Brown County Circuit Court, Richard J. Dietz, Judge. The circuit court

---

[1] *State v. Smith,* 2009 WI App 16, 316 Wis. 2d 165, 762 N.W.2d 856.

concluded that Wis. Stat. § 301.45 (2005–06),[2] Wisconsin's sex offender registration statute, was constitutional as applied to Smith and denied Smith's motion to dismiss the charge of failure to comply with sex offender registration. Smith appealed and the court of appeals affirmed the circuit court's decision. Smith petitioned this court for review, which we accepted. We affirm the court of appeals' decision.

¶ 2. This case requires us to decide whether Wis. Stat. § 301.45, Wisconsin's sex offender registration statute, is unconstitutional as applied to Smith on the grounds that it violates his substantive due process and equal protection rights. We conclude that Wis. Stat. § 301.45 is constitutional as applied to Smith because requiring Smith to register under § 301.45 is rationally related to a legitimate governmental interest. Smith has failed to prove that the registration requirements of § 301.45 as applied to him are unconstitutional beyond a reasonable doubt.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶ 3. On March 12, 2001, Smith pled guilty to the charge of false imprisonment in violation of Wis. Stat. § 940.30 (1999–2000).[3] According to the criminal complaint, Smith and others forced a minor to ride around with them in a vehicle in order to collect a drug debt from the minor's friend. Even though the complaint alleges that Smith and at least one other person physi-

---

[2] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

[3] Wisconsin Stat. § 940.30, "False imprisonment," provides "Whoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class E felony."

cally threatened the minor in order to force him to assist in the search, there is no allegation that the false imprisonment entailed anything sexual.

¶ 4. However, under the unambiguous language of Wis. Stat. § 301.45, Smith is required to register as a sex offender because he was convicted of false imprisonment of a minor.[4] Because he failed to so register,

---

[4] Wisconsin Stat. § 301.45(1g), "Who is covered" under "Sex offender registration," provides in relevant part: "[A] person shall comply with the reporting requirements under this section if he or she . . . (a) Is convicted . . . for a sex offense."

Wisconsin Stat. § 301.45(1d), "Definitions," provides in relevant part: "(b) 'Sex offense' means a violation . . . of s. 940.30 [false imprisonment] or 940.31 [kidnapping] if the victim was a minor and the person who committed the violation was not the victim's parent."

Wisconsin is not alone; 41 other states, and the District of Columbia, require individuals convicted of false imprisonment or kidnapping of a minor to register as sex offenders—regardless of whether the crime was of a sexual nature. *See* Alaska: Alaska Stat. § 12.63.010(a) (2008 & Supp. 2009) (kidnapping); Arizona: Ariz. Rev. Stat. Ann. § 13–3821(A)(1)-(2) (2001 & Supp. 2009) (kidnapping and unlawful imprisonment); Arkansas: Ark. Code Ann. §§ 12–12–903(12)(A)(i)(q)-(r), 12–12–905 (2009) (kidnapping and false imprisonment); Connecticut: Conn. Gen. Stat. §§ 54–250(2)(B), 54–251 (2009) (kidnapping); District of Columbia: D.C. Code §§ 22–4001(8)(C), 22–4014 (2001 & Supp. 2009) (kidnapping); Florida: Fla. Stat. § 943.0435(1)(a)1.a. (2009) (kidnapping and false imprisonment); Georgia: Ga. Code Ann. § 42–1-12(a)(9)(B)(i)-(ii) (Supp. 2009) (kidnapping and false imprisonment); Hawaii: Haw. Rev. Stat. §§ 846E-1, 846E-2 (Supp. 2009) (kidnapping and unlawful imprisonment); Idaho: Idaho Code Ann. §§ 18.8304(1)(a), 18.8307 (2004 & Supp. 2009) (kidnapping); Indiana: Ind. Code Ann. §§ 11–8-8–5(a)(11), 11–8-8–7 (LexisNexis Supp. 2009) (kidnapping); Iowa: Iowa Code Ann. §§ 692A.1(5)(a)-(b), 692A.2 (West 2003 & Supp. 2009) (kidnapping and false imprison-

Smith was charged on December 14, 2005, with violat-

ment); Kansas: Kan. Stat. Ann. §§ 22–4902(a)(4)(A)-(C), 22–4906 (2007 & Supp. 2009) (kidnapping and criminal restraint); Kentucky: Ky. Rev. Stat. Ann. §§ 17.500(3)(a)1–2, 17.510 (LexisNexis 2008 & Supp. 2009) (kidnapping and unlawful imprisonment); Louisiana: La. Rev. Stat. Ann. §§ 15:541(12)(a), 15:542 (kidnapping) (2005 & Supp. 2010); Maine: Me. Rev. Stat. Ann. tit. 34, §§ 11203(6)(B), 11222 (Supp. 2009) (kidnapping and criminal restraint); Massachusetts: Mass. Gen. Laws Ann. ch. 6, §§ 178C, 178E (LexisNexis 1999 & Supp. 2009) (kidnapping); Michigan: Mich. Comp. Laws Ann. §§ 28.722(e)(vi), 28.723 (West 2004 & Supp. 2009) (kidnapping); Minnesota: Minn. Stat. § 243.166(1b)(a)(1)(ii) (2008 & Supp. 2009) (kidnapping); Mississippi: Miss. Code Ann. § 45–33–23(g)(i), 45–33–25 (2004 & Sup. 2009) (kidnapping); Missouri: Mo. Rev. Stat. § 589.400(2) (2000 & Supp. 2009) (kidnapping and felonious restraint); Montana: Mont. Code Ann. §§ 46–23–502(9)(a), 46–23–504 (2009) (kidnapping and unlawful restraint); Nebraska: Neb. Rev. Stat. §§ 29–4003(1)(a)(i)(A)-(B), 29–4004 (2008 & Supp. 2009) (kidnapping and false imprisonment); Nevada: Nev. Rev. Stat. §§ 179D.0357(1)-(2), 179D.240 (2006 & Supp. 2007) (kidnapping and false imprisonment); New Hampshire: N.H. Rev. Stat. Ann. §§ 651–B:1 VII(a), 651–B:2 (2007 & Supp. 2009) (kidnapping, criminal restraint, and false imprisonment); New Jersey: N.J. Stat. Ann. § 2C:7–2.b.(2) (West 2005 & Supp. 2009) (kidnapping, criminal restraint, and false imprisonment); New Mexico: N.M. Stat. §§ 29–11A-3.E.(6)-(7), 29–11A-4 (2004 & Supp. 2008) (kidnapping and false imprisonment), *declared unconstitutional by ACLU of N.M. v. City of Albuquerque,* 137 P.3d 1215, 1226 (N.M. Ct. App. 2006); New York: N.Y. Correct. Law §§ 168–a(2), 168–f (McKinney 2003 & Supp. 2010) (kidnapping and unlawful imprisonment); North Carolina: N.C. Gen. Stat. §§ 14–208.6(1m), 14–208.7 (2009) (kidnapping); North Dakota: N.D. Cent. Code § 12.1–32–15.1.a (1997 & Supp. 2009) (kidnapping and felonious restraint); Ohio: Ohio Rev. Code Ann. §§ 2950.01(A)(9), 2950.04 (West 2006 & Supp. 2009) (kidnapping); Oregon: Or. Rev. Stat. §§ 181.594(5)(L), (p), 181.595 (2009) (kidnapping); Pennsylvania: Pa. Const. Stat.

ing Wis. Stat. § 301.45(2)(g).[5]

¶ 5. On March 15, 2006, Smith brought a motion to dismiss the charge of failure to comply with sex offender registration on the basis that, as applied to him, the sex offender reporting requirements of Wis. Stat. § 301.45 violate his due process and equal protection rights under the United States and Wisconsin Constitutions because the crime he committed was not sexual. After a hearing on April 20, 2006, the circuit court denied the motion and concluded that § 301.45 was constitutional as applied to Smith.

Ann. § 9795.1(a)(1) (2007 & Supp. 2009) (kidnapping); Rhode Island: R.I. Gen. Laws §§ 11–37.1-2(e)(1), 11–37.1-3 (2002 & Supp. 2009) (kidnapping and false imprisonment); South Carolina: S.C. Code Ann. § 23–3-430(C)(16) (2007 & Supp. 2009) (kidnapping); South Dakota: S.D. Codified Laws §§ 22–24B-1(8), 22–24B-2 (2006 & Supp. 2009) (kidnapping); Tennessee: Tenn. Code Ann. §§ 40–39–202(20)(A)(vi), 40–39–203 (2006 & Supp. 2009) (kidnapping); Texas: Tex. Code Crim. Proc. Ann. §§ 62.001(5)(E), 62.051 (Vernon 2006 & Supp. 2009) (kidnapping and unlawful restraint); Utah: Utah Code Ann. § 77–27–21.5 (2008) (kidnapping); Vermont: Vt. Stat. Ann. tit. 13, §§ 5401(10)(B)(ii), 5402 (2009) (kidnapping); Washington: Wash. Rev. Code Ann. § 9A.44.130 (West 2009 & Supp. 2010) (kidnapping); West Virginia: W. Va. Code Ann. § 15–12–2(b)(4) (LexisNexis 2009) (kidnapping); Wyoming: Wyo. Stat. Ann. §§ 7–19–301(a)(iv)(A)-(C), 7–19–302 (2009) (kidnapping, felonious restraint, and false imprisonment).

[5] Wisconsin Stat. § 301.45(2)(g) provides:

The department may send a person subject to sub. (1g) a notice or other communication requesting the person to verify the accuracy of any information contained in the registry. A person subject to sub. (1g) who receives a notice or communication sent by the department under this paragraph shall, no later than 10 days after receiving the notice or other communication, provide verification of the accuracy of the information to the department in the form and manner specified by the department.

¶ 6. Smith then filed an interlocutory appeal, which was denied by the court of appeals on June 30, 2006. On April 26, 2007, Smith pled guilty to a violation of Wis. Stat. § 301.45(2)(g) for his failure to provide the registration information required as a result of his conviction for a "sex offense."[6] He was sentenced to one year of confinement followed by one year of extended supervision.

¶ 7. Smith appealed his conviction to the court of appeals and challenged the constitutionality of the sex offender registration statute as applied to him. The court of appeals affirmed the circuit court's decision that Wis. Stat. § 301.45 was constitutional as applied to Smith. After first rejecting Smith's assertion that sex offender registration interferes with fundamental liberty interests,[7] the court of appeals concluded that § 301.45 was constitutional as applied to Smith because "there is a rational basis for the distinctions created by the legislature, the means specified in the statute, and the legislative goals of the statute."[8] On March 18, 2009, this court accepted Smith's petition for review. We now affirm the court of appeals' decision and conclude that § 301.45 is constitutional as applied to Smith.

---

[6] Wisconsin's sex offender registration statute defines "sex offense" to include the offense of false imprisonment "if the victim was a minor and the person who committed the violation was not the victim's parent." Wis. Stat. § 301.45(1d)(b). Therefore, under this statutory definition, Smith committed a "sex offense."

[7] The parties now agree that the registration requirements do not implicate any of Smith's fundamental liberty interests. Petitioner's brief at 15; Respondent's brief at 10.

[8] The court of appeals reasoned that Smith "overlooks the purpose of the statute, which is protecting the public—specifically, children. The goal is not to identify individuals guilty of a crime with a sexual element."

## II. STANDARD OF REVIEW

¶ 8. The constitutionality of a statute is a question of law, which this court determines independently of both the circuit court and the court of appeals but still benefitting from their analyses. *See State v. Weidner,* 2000 WI 52, ¶ 7, 235 Wis. 2d 306, 611 N.W.2d 684; *State v. Janssen,* 219 Wis. 2d 362, 370, 580 N.W.2d 260 (1998). A statute enjoys a presumption of constitutionality. *Janssen,* 219 Wis. 2d at 370. To overcome that presumption, a party challenging a statute's constitutionality bears a heavy burden. *State v. Cole,* 2003 WI 112, ¶ 11, 264 Wis. 2d 520, 665 N.W.2d 328. It is insufficient for the party challenging the statute to merely establish either that the statute's constitutionality is doubtful or that the statute is probably unconstitutional. *Id.* Instead, the party challenging a statute's constitutionality must "prove that the statute is unconstitutional beyond a reasonable doubt." *Id.*

¶ 9. In this case, Smith claims that Wis. Stat. § 301.45, Wisconsin's sex offender registration statute, is unconstitutional as applied to him. Therefore, Smith must prove that as applied to him, § 301.45 is unconstitutional beyond a reasonable doubt.

## III. ANALYSIS

¶ 10. Smith argues that Wis. Stat. § 301.45 is unconstitutional as applied to him because it requires him to register as a sex offender even though his underlying conviction for false imprisonment of a minor was not of a sexual nature. Smith acknowledges, however, that § 301.45 serves a legitimate state interest, and accordingly, he does not raise a facial constitu-

tional challenge to the statute.[9] Rather, he argues that § 301.45 is unconstitutional as applied to him because requiring him to register is irrational, arbitrary, and cannot be rationally related to any legitimate government interest.[10] Smith asserts that the purpose of the statute is to protect the public from sex offenders and since he was not convicted of an offense that was sexual, he cannot be required to register under § 301.45.

¶ 11. We disagree with Smith and conclude that Wis. Stat. § 301.45 does not violate his substantive due process or equal protection rights. Smith has failed to prove beyond a reasonable doubt that as applied to him, the sex offender registration requirements are arbitrary or irrational.

■■

¶ 12. "This court has held the due process and equal protection clauses of the Wisconsin Constitution are the substantial equivalents of their respective clauses in the federal constitution." *State v. McManus,* 152 Wis. 2d 113, 130, 447 N.W.2d 654 (1989) (citing *State ex rel. Cresci v. Schmidt,* 62 Wis. 2d 400, 414, 215 N.W.2d 361 (1974)). Whether reviewing substantive due process or equal protection, the threshold question is

---

[9] When a party raises a "facial challenge," the party "claim[s] that a statute is unconstitutional on its face—that is, that it always operates unconstitutionally." *Black's Law Dictionary* 223 (7th ed. 1999). In contrast, an as-applied challenge, as Smith raises, is a "claim that a statute is unconstitutional on the facts of a particular case or to a particular party." *Id.*

[10] The State argues that Smith waived the right to raise his "as applied" challenge by pleading guilty. *See State v. Bush,* 2005 WI 103, ¶ 17, 283 Wis. 2d 90, 699 N.W.2d 80. We decline to resolve this case on that basis because of the novel issue of law presented and its statewide importance.

whether a fundamental right is implicated or whether a suspect class is disadvantaged by the challenged legislation. If either is the case, the challenged legislation must survive strict scrutiny. In the present case, the parties agree that a fundamental right is not implicated and that a suspect class is not disadvantaged. Thus, the challenged legislation is not subject to a strict scrutiny review; rather, we undergo the more deferential, rational basis review. When neither a fundamental right has been interfered with nor a suspect class been disadvantaged as a result of the classification, "the legislative enactment 'must be sustained unless it is "patently arbitrary" and bears no rational relationship to a legitimate government interest.' " *McManus,* 152 Wis. 2d at 131 (quoting *Frontiero v. Richardson,* 411 U.S. 677, 683 (1973)). In this as applied challenge, rational basis analysis requires us to search for any facts upon which the legislation reasonably could be applied to Smith.

¶ 13. As explained herein, requiring Smith to register as a sex offender is rationally related to the state's legitimate interest in protecting the public, including children, and assisting law enforcement. Requiring Smith to register, even though his conviction for false imprisonment was not of a sexual nature, is rationally related to the government interest in protecting the public and assisting law enforcement because: (1) false imprisonment has been linked to the commission of sexual assault and violent crimes against children; (2) an offender's sexual motive or intent may be difficult to prove or determine within the context of false imprisonment; and (3) false imprisonment places the minor in a vulnerable position because the offender, rather than the minor, has control over the minor's body and freedom of movement. The legislature chose to require registration by those, like Smith, who com-

mit the crime of falsely imprisoning a minor, regardless of whether that crime is of a sexual nature. We must afford deference to the words chosen by the legislature and cannot conclude that there is no legitimate government interest in requiring registration of such offenders.

### A. Substantive Due Process and Equal Protection- Rational Basis Analysis

■

¶ 14. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974). "Due process 'bars certain arbitrary, wrongful government actions.'" *State v. Quintana,* 2008 WI 33, ¶ 80, 308 Wis. 2d 615, 748 N.W.2d 447 (quoting *State v. Radke,* 2003 WI 7, ¶ 12, 259 Wis. 2d 13, 657 N.W.2d 66). "Substantive due process forbids a government from exercising power without any reasonable justification in the service of a legitimate governmental objective." *Quintana,* 308 Wis. 2d 615, ¶ 80. To have a rational basis, substantive due process requires only that "the means chosen by the legislature bear a reasonable and rational relationship" to a legitimate government interest. *McManus,* 152 Wis. 2d at 130. Smith's substantive due process argument is grounded in the notion that there is no rational basis for requiring him to register as a sex offender because his conviction was not sexual.

■

¶ 15. The equal protection clause, on the other hand, "is designed to assure that those who are similarly situated will be treated similarly." *Treiber v. Knoll,* 135 Wis. 2d 58, 68, 398 N.W.2d 756 (1987). "The equal protection clause requires that the legislature have

reasonable and practical grounds for the classifications that it draws" and when determining if there is a rational basis, we must presume that the legislative action is valid. *Quintana,* 308 Wis. 2d 615, ¶ 79 (citing *McManus,* 152 Wis. 2d at 130). "[T]he state retains broad discretion to create classifications so long as the classifications have a reasonable basis." *McManus,* 152 Wis. 2d at 131 (citing *Graham v. Richardson,* 403 U.S. 365, 371 (1971)). Smith's equal protection claim is grounded in the notion that there is no rational basis for requiring those in his class—criminals who are convicted of false imprisonment of a minor where the crime is not of a sexual nature—to register under Wis. Stat. § 301.45 because requiring such individuals to register as sex offenders diminishes the registry's usefulness.[11]

¶ 16. Although substantive due process and equal protection may have different implications, "[t]he analysis under both the due process and equal protection clauses is largely the same." *Quintana,* 308 Wis. 2d 615, ¶ 78. Accordingly, as a practical matter, the rational basis analysis applicable to Smith's substantive due process challenge is also relevant to his equal protection challenge. The question for this court to resolve is

[11] We recognize that Smith's equal protection claim runs dangerously close to a facial constitutional challenge, although he raises an as-applied challenge. To resolve Smith's as-applied challenge, we encompass our equal protection analysis in our substantive due process analysis. *See Chapman v. United States,* 500 U.S. 453, 465 (1991) ("[A]n argument based on equal protection essentially duplicates an argument based on due process."); *State v. Jorgensen,* 2003 WI 105, ¶ 32, 264 Wis. 2d 157, 667 N.W.2d 318 ("[T]he analyses of the due process claims and equal protection claims are largely the same.").

whether we can conceive any facts upon which the legislation as applied to Smith could be reasonably based. Stated differently, we must determine whether we can conceive of any rational basis for requiring Smith, who was convicted of false imprisonment of a minor, to register under Wis. Stat. § 301.45 even though his crime was not of a sexual nature.

¶ 17. The rational basis test is a deferential one. The United States Supreme Court has described it as "a paradigm of judicial restraint." *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993).

¶ 18. Thus, for purposes of our constitutional analysis, we owe great deference to legislative action, and Smith bears the high burden of proving that Wis. Stat. § 301.45 as applied to him is unconstitutional beyond a reasonable doubt.

### B. Wisconsin's Registration Legislation

¶ 19. Wisconsin created a sex offender registry in 1993. *See* 1993 Wis. Act 98, § 116; Wis. Stat. § 175.45 (1993–94). Initially, the statute required registration only for those convicted of first- or second-degree sexual assault and first- or second-degree sexual assault of a child. *Id.*

¶ 20. In 1996, Wisconsin expanded sex offender registration by enacting 1995 Wis. Act 440, which created Wis. Stat. § 301.45 and Wis. Stat. § 301.46 (effective June 1, 1997).[12] *See* 1995 Wis. Act 440, §§ 26–75. The crime of false imprisonment of a minor

---

[12] Access to sex offender registry information was made available to the public beginning June 1, 2001. *See* 1999 Wis. Act 89, § 76; Wis. Stat. § 301.45(2m)(b)1. (2001–02).

was one of the offenses added to the sex offender registry in enacting Wis. Stat. § 301.45. *See* 1995 Wis. Act 440, § 28. This expansion was subsequent to and consistent with federal passage of the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act of 1994 ("Jacob Wetterling Act").[13] *See* 42 U.S.C. § 14071 (1994). The Jacob Wetterling Act created a nationwide registry of individuals who were "convicted of a criminal offense against a victim who is a minor or who [were] convicted of a sexually violent offense." *See id.,* § 14071(a)(1)(A).[14] Federal funding was conditioned on the states enacting such legislation. *See* § 14071(g)(1)-(2); *State ex rel. Kaminski v. Schwarz,* 2001 WI 94, ¶ 53 n.16, 245 Wis. 2d 310, 630 N.W.2d 164 (noting that the Jacob Wetterling Act "conditioned federal funding on whether states enacted sex offender registration and notification laws"). Consequently, numerous states so acted.[15]

---

[13] The Wisconsin Department of Corrections "Sex Offender Community Notification" workgroup "recommended expanding the then current sex offender registration law to comply with the [Jacob Wetterling Act]." *State ex rel. Kaminski v. Schwarz,* 2001 WI 94, ¶ 53 & n.16, 245 Wis. 2d 310, 630 N.W.2d 164 (referencing the Legislative Reference Bureau's drafting file for 1995 Wis. Act 440).

[14] "The term 'criminal offense against a victim who is a minor' means any criminal offense in a range of offenses specified by State law which is comparable to . . . false imprisonment of a minor, except by a parent." 42 U.S.C. § 14071(a)(3)(A)(ii)(1994).

[15] "The federal law and similar laws passed in each of the 50 states resulted from 'Megan's Law,' passed in New Jersey in 1994, requiring community notification of sex offenders residing in any community." *Kaminski,* 245 Wis. 2d 310, ¶ 53 n.16 (citing *State v. Bollig,* 2000 WI 6, ¶ 19 n.4, 232 Wis. 2d 561, 605 N.W.2d 199).

¶ 21. Consistent with the broad scope of crimes included in the Jacob Wetterling Act, Wisconsin law requires automatic registration for defendants convicted of certain sex offenses. *See* Wis. Stat. § 301.45(1g)(a). Wisconsin's sex offender registration statute broadly defines "sex offense" to include offenses of a sexual nature against children, certain offenses of a sexual nature that are not dependent on the age of the victim, and certain other offenses without regard to whether they are of a sexual nature, including the offense of false imprisonment "if the victim was a minor and the person who committed the violation was not the victim's parent." *See* Wis. Stat. § 301.45(1d)(b).[16] Despite the fact that the legislature could have required that the crime of false imprisonment of a minor be of a sexual nature, the statute is devoid of any such requirement.[17]

All 50 states have enacted sex offender registration legislation. In addition to Wisconsin and the 41 states already mentioned, *supra* note 4, see Alabama: Ala. Code § 13A-11-200 (2006 & Supp. 2009); California: Cal. Penal Code § 290.001 (West 2008); Colorado: Colo. Rev. Stat. § 16-22-103 (2009); Delaware: Del. Code Ann. tit. 11, § 4120 (2001 & Supp. 2009); Illinois: 730 Ill. Comp. Stat. 150/1-3 (2008); Maryland: Md. Code Ann., Crim. Proc. § 11-704 (LexisNexis 2001 & Supp. 2009); Oklahoma: Okla. Stat. Ann. tit. 57, § 582 (West 2004 & Supp. 2010); Virginia: Va. Code Ann. § 9.1-901 (2006 & Supp. 2009).

[16] Wisconsin Stat. § 301.45(1d)(b) provides:

"Sex offense" means a violation, or the solicitation, conspiracy, or attempt to commit a violation, of s. 940.22(2), 940.225(1), (2) or (3), 944.06, 948.02(1) or (2), 948.025, 948.05, 948.055, 948.06, 948.07, 948.075, 948.08, 948.085, 948.095, 948.11(2)(a) or (am), 948.12, 948.13, or 948.30, or of s. 940.30 or 940.31 if the victim was a minor and the person who committed the violation was not the victim's parent.

[17] The commission of false imprisonment of a sexual nature, if charged and convicted as such, would presumably

¶ 22. Conversely, the legislature did require a sexual component when it granted the trial courts discretion to order defendants who are convicted of offenses that are not referenced in Wis. Stat. § 301.45 to register if "the court determines that the underlying conduct was sexually motivated . . . and that it would be in the interest of public protection to have the person report."[18] *See* Wis. Stat. § 973.048(1m). Notably, no such language is present in the Wis. Stat. § 301.45

require registration under another crime included within the statutory definition of "sex offense."

In contrast to Wisconsin's sex offender registration statute, and the statutes of 41 other states, *see supra* note 4, legislation in a few states expressly provides that the crime of false imprisonment or kidnapping of a minor requires sex offender registration only if there is a sexual component to the crime. *See* California: Cal. Penal Code § 290.001 (West 2008), Cal. Welf. & Inst. Code § 6600(b) (West 1998 & Supp. 2010) (defining "sexually violent offense" as including a felony kidnapping violation "committed with the intent to commit a violation of" rape, aiding or abetting rape, sodomy, lewd or lascivious acts involving children, oral copulation, or penetration by foreign object); Illinois: 730 Ill. Comp. Stat. 150/2(B)(1.5) (2008) (defining "sex offense" as including kidnapping or unlawful restraint "when the victim is a person under 18 years of age, the defendant is not a parent of the victim, [and] the offense was sexually motivated"); Ohio: Ohio Rev. Code Ann. § 2950.01(A)(10) (West Supp. 2009) (defining "sexually oriented offense" as including unlawful restraint with a sexual motivation).

[18] Wisconsin Stat. § 973.048(2m) requires registration for those who are convicted of a sex offense under Wis. Stat. § 301.45. For purposes of the court's determination of whether a non-Wis. Stat. § 301.45 offender registers under sub. (1m), the court utilizes the following definition: A "sexually motivated" act is defined as an act that "is for the actor's sexual arousal or gratification or for the sexual humiliation or degradation of the victim." Wis. Stat. § 980.01(5).

reference to false imprisonment of a minor. In fact, Wis. Stat. § 973.048(1m) specifically recognizes the existing reporting requirements of Wis. Stat. § 301.45 because it contains the language "[e]xcept as provided in sub. (2m)." Wisconsin Stat. § 973.048(2m) is the subsection that requires registration for those who are convicted of a sex offense under Wis. Stat. § 301.45.

¶ 23. The legislature was well aware of its ability to carve out exceptions to the registration requirement. The legislature provided for an exception to registration for juvenile offenders who engage in sexual activity as defined by Wis. Stat. § 301.45(1m).[19] Yet, the legislature retained the reporting requirement for Smith, and others like Smith, who committed the crime of false imprisonment of a minor, regardless of whether his crime was of a sexual nature.

¶ 24. By crafting the Wis. Stat. § 301.45(1m) exception, the legislature could have rationally concluded that a juvenile involved in a factually consensual sexual relationship with a child is less of a threat to public safety than someone who would confine or restrain a child without the child's consent. *See State v. Joseph E.G.*, 2001 WI App 29, ¶ 12, 240 Wis. 2d 481, 623 N.W.2d 137. In *Joseph E.G.*, fifteen-year-old Joseph

---

[19] "[T]he court shall require the person to comply with the reporting requirements under s. 301.45 unless the court determines, after a hearing on a motion made by the person, that the person is not required to comply under s. 301.45(1m)." Wis. Stat. § 973.048(2m).

Wisconsin Stat. § 301.45(1m) does exempt certain offenders from registration for underage sexual activity, but the court still must determine at a hearing that "[i]t is not necessary, in the interest of public protection, to require the person to comply with the reporting requirements under this section." Wis. Stat. § 301.45(1m)3.

challenged the constitutionality of having to register as a sex offender after he was convicted of false imprisonment of another juvenile as a party to the crime. *Id.*, ¶ 3. Joseph and one Eddie Johnson forced a thirteen-year-old girl into the trunk of a car and later humiliated her by ordering her into a lake, throwing gravel at her, slapping her, and forcing her to kiss Johnson's clothed buttocks and suck on his finger. *Id.* The court of appeals distinguished Joseph's crime from the factual scenario that could relieve a juvenile offender from registration under Wis. Stat. § 301.45(1m). *Id.*, ¶ 12. Subsection 301.45(1m) "craft[s] a narrow exception to mandatory registration for sex offenders in cases of factually consensual sexual contact between two minors who, but for the age of the younger child, would have broken no law." *Id.*, ¶ 11. In contrast to the case of sexual contact between two consenting minors, "the crime of false imprisonment is never consensual and never a crime solely because of the age of the victim." *Id.*, ¶ 12.

¶ 25. The legislature opted not to exempt Smith, and others like him, from the registration requirement despite the fact that his crime of false imprisonment of a minor was not of a sexual nature. We must afford deference to the words chosen by the legislature and cannot conclude that requiring registration of such offenders is not rationally related to a legitimate government interest.

C. Wisconsin Stat. § 301.45 as applied to Smith is Rationally Related to the State's Legitimate Interest in Protecting the Public and Assisting Law Enforcement

¶ 26. Smith does not forward a facial challenge and acknowledges that Wis. Stat. § 301.45 serves a legitimate government interest. As this court has rec-

ognized, Wisconsin's sex offender registration statute "reflect[s] an 'intent to protect the public and assist law enforcement' and [is] 'related to community protection.' " *Kaminski,* 245 Wis. 2d 310, ¶ 41 (quoting *State v. Bollig,* 2000 WI 6, ¶¶ 21–22, 232 Wis. 2d 561, 605 N.W.2d 199); *see also Smith v. Doe,* 538 U.S. 84, 93 (2003) (describing Alaska's sex offender registration statute as part of a nonpunitive scheme designed to protect the public from harm). The Wisconsin Department of Corrections, which maintains our state's sex offender registry, notes that release of offender information "will further the governmental interests of public safety and enhance strategies for crime detection and prevention."[20] In this case, to succeed on his as-applied challenge, Smith must prove beyond a reasonable doubt that requiring him to register as a sex offender is not rationally related to a legitimate government interest.

¶ 27. Significantly, Smith's argument essentially boils down to the fact that the title of the registry and the statute's language unfairly characterize him as a "sex offender" because the crime he committed was not sexual.[21] However, when a statute's language is unam-

---

[20] Wisconsin Department of Corrections, Sex Offender Registry Program website, http://offender.doc.state.wi.us/public/proginfo/sor.jsp (providing background on the registry program).

[21] The sex offender registry is available at http://offender.doc.state.wi.us/public/home.jsp. The registry website contains a "Frequent Questions" section which provides that the registry "applies only to offenders who have violated certain sex crimes or other related statutes that indicate victimization of children or vulnerable persons." *See* http://offender.doc.state.wi.us/public/fyi/faq.html. The "Fre-

biguous, as this one is here, sound principles of statutory construction require that we not look to the title for guidance or instruction.[22] The name of the registry and the label that is associated with Smith's crime do not change the fact that the statute includes his offense as one for which registration is required. Renaming Wis. Stat. § 301.45 "Wisconsin's Crimes against Children and Sexually Violent Offender Registry" or changing the phrase "sex offense" to "qualifying offense" makes the statute no more or less rational to protecting the public and assisting law enforcement.[23] The regis-

quent Questions" section also identifies "False Imprisonment-victim was minor and not the offender's child" as a "registerable offense." Prior to retrieving the results for an "offender search," the searcher is linked to an initial page regarding the purpose and scope of the registry. This initial page states that the "data is being provided on the Internet to make the information more easily available and accessible, not to warn about any specific individual." "Individuals are included in the registry solely by virtue of their conviction record and state law." *See* http://offender.doc.state.wi.us/public/search/sor. If the searcher agrees to proceed to the search result for Smith, his "Offense Requiring Registration" is specified as false imprisonment, in violation of Wis. Stat. § 940.30. *See* http://offender.doc.state.wi.us/public/search/sor?action=offenderdetail&offender=44302&x.

[22] *See* Wis. Stat. § 990.001(6) (The "titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes."); *Noffke v. Bakke,* 2009 WI 10, ¶ 25, 315 Wis. 2d 350, 760 N.W.2d 156 ("[A] title may not be used to alter the meaning of a statute or create an ambiguity where no ambiguity existed.").

[23] As it is unnecessary for our decision, we offer no opinion whether it carries a greater stigma to be a "sex offender" or a "violent offender against children."

The Jacob Wetterling Act was the impetus behind Wisconsin's addition of false imprisonment of a minor to our sex offender registry act. *See Bollig,* 232 Wis. 2d 561, ¶ 18 & n.4;

try requirement remains rationally related to protecting the public and assisting law enforcement under the "crimes against children and sexually violent offender" title, just as it does under the "sex offender" title. The legislature enacted Wis. Stat. § 301.45 within the constitutional boundaries of due process and equal protection. Requiring someone convicted of false imprisonment of a child to register is rationally related to a legitimate government interest in protecting the public —particularly children—and in assisting law enforcement in those efforts.

¶ 28. Smith argues, however, that the only legitimate government interest of Wis. Stat. § 301.45 is to protect the public from sexually motivated offenders. Accordingly, Smith maintains that § 301.45 can reasonably apply only to those who commit an offense which has a sexual element or motivation. Because his crime of false imprisonment of a minor was not of a sexual nature, Smith argues that requiring him to register is arbitrary and not rationally related to a legitimate government interest. In so arguing, however, Smith is essentially asking this court to undertake a strict scrutiny review of the statute. This court's duty is not to

_Kaminski_, 245 Wis. 2d 310, ¶ 53 n.16; Memorandum from Anthony Streveler, Director of the Office of Sex Offender Programs to Robert Margolies, Legislative Liaison (November 13, 1995)(Plaintiff-Respondent Brief, R-Ap. at 105–29); _see also People v. Knox_, 903 N.E.2d 1149, 1153 (N.Y. 2009), _cert. denied_, 130 S.Ct. 552 (Nov. 9, 2009) (noting that there was never any sexual evidence in relation to the abduction of Jacob Wetterling). Wisconsin adopted the purpose and registration scheme from the Jacob Wetterling Act even though the state did not adopt the same title. The legislature's choice of a title, however, does not dictate a finding that a statute is unconstitutional. It is Smith who bears the heavy burden of proving that the statute as applied to him is irrational in a constitutional sense.

determine whether requiring Smith to register as a sex offender is narrowly tailored to his espoused purpose of the statute. Instead, our analysis concerns whether requiring Smith to register as a sex offender is rationally related to a legitimate government interest.

¶ 29. The State responds to Smith's assertions by arguing that requiring registration of those convicted of false imprisonment of a minor, even if the crime is not of a sexual nature, is rationally related to the broader legitimate government interest in protecting the public and assisting law enforcement. The State argues that requiring Smith to register is not arbitrary or irrational because (1) false imprisonment is linked to the commission of sexual assault and other violence against children; (2) it is difficult to determine whether false imprisonment has a sexual component; and (3) false imprisonment involves the exercise of control over a child's body that puts a child in a sexually vulnerable position. The State also asserts that including offenders such as Smith does not diminish the registry's value and that Smith's complaints are more properly directed to the legislature. We agree with the State.

¶ 30. The legislature could have numerous reasons for requiring registration of Smith and the class like him, those who stand convicted of falsely imprisoning a minor. Legislatures around the country have acknowledged a nexus between child abductions and sexual offenses, and a majority of states have enacted similar legislation.[24] *See People v. Cintron,* 827 N.Y.S.2d 445, 455–56 (N.Y. Sup. Ct. 2006), *aff'd, People v. Knox,* 903 N.E.2d 1149 (N.Y. 2009) (The legislative history of [the Jacob Wetterling Act] reflects that Congress intentionally included kidnapping and unlawful imprison-

---

[24] *See supra* note 4.

ment of a minor in the crimes subject to registration requirements and was well aware of the connection between child abduction and the risk of sexual abuse.). In so requiring child abductors to register, the legislature may well have rationally concluded that child abductions are often precursors to sexual offenses. *See People v. Johnson,* 870 N.E.2d 415, 426 (Ill. 2007) ("Our General Assembly, like New York's legislature, recognized that aggravated kidnapping can be a precursor to sex offenses against children.").[25]

---

[25] After the Illinois Supreme Court accepted review of *People v. Johnson,* the Illinois legislature redefined the term "sex offense" under the state's Sex Offender Registration Act to include aggravated kidnapping of a minor when "the offense was sexually motivated." 870 N.E.2d 415, 418 (Ill. 2007) (citing 730 Ill. Comp. Stat. 150/2(B)(1.5) (2008)). Because the statute's definition of "sex offense" did not hinge on sexual motivation at the time of the defendant's conviction of aggravated kidnapping of a minor, *Johnson,* 870 N.E.2d at 420, the Illinois Supreme Court analyzed the constitutionality of the original statute, under which the defendant was placed on the sex offender registry, *id.* at 421. The original statute defined "sex offense" to include aggravated kidnapping when the victim is under 18 years of age, and the defendant is not the victim's parent. *Id.* at 417. Thus, the defendant was required to register as a sex offender even though sexual assault allegations did not accompany his conviction of aggravated kidnapping of a minor. *Id.* at 420. The Illinois Supreme Court concluded that the original statute was constitutional as applied to the defendant:

> The General Assembly then chose to include aggravated kidnapping of a minor by a nonparent in the [Sex Offender Registration] Act's definition of sex offense and, consequently, to impose a registration requirement under the Act on persons convicted of such an offense, regardless of whether their conduct was sexually motivated. We will not question the wisdom of this choice. To satisfy the rational basis test, a statute need not be the best method of accomplishing a legislative goal; it must simply be reasonable. . . .

*Id.* at 426.

¶ 31. Our legislature could have rationally decided that, on balance, it is important to warn the public and law enforcement about those criminals, like Smith, who falsely imprison a minor, regardless of whether the State can prove a sexual component. Moreover, to require a second layer of proof regarding the sexual nature of the crime would prove unworkable and inconsistent.[26] Imposing such a requirement would frustrate the purpose of the statute and confuse the legitimate goals of the legislature.

¶ 32. The legislature may have considered those instances where intervening circumstances prevent an abductor from committing a sexual offense. Perhaps with this consideration in mind, the protection of society and children was properly elevated so as to include Smith in the registry regardless of whether there is proof that the crime he committed was sexual. Is a person who falsely imprisons a minor with the purpose to commit a sexual assault less dangerous to the public if the assault is thwarted, the child cannot be found, or the child cannot communicate about the crime? An abductor's intentions or actions cannot always be proven or alleged, particularly when a child is

---

[26] If the sexual nature of Smith's conviction for false imprisonment had to be assessed, numerous questions quickly surface: (1) Must there be a formal pleading? If so, what must be contained within such a pleading? (2) What attack may be leveled against the pleading and what standard applies to allow the allegations to survive? (3) Is a special hearing required? If so, when? By whom? Are there witnesses or merely an offer of proof? (4) Who bears the burden of proof? (5) What is the burden? (6) What proof is required and is there a right to cross examination? Significantly, the legislature did provide courts instruction regarding how to conduct a hearing when deciding whether certain underage offenders may be exempt from registering for underage sexual activity. *See* Wis. Stat. § 301.45(1m).

missing or the body is decomposed. The protection of the public and children is furthered by the fact that the statute does not require that the State prove what the abductor must have been thinking or whether the abductor committed a sexual act. The legislature chose to protect the public and assist law enforcement by requiring certain offenders, like Smith, to register regardless of whether proof exists as to the crime's sexual underpinnings.

¶ 33. We know that a sexual motive or purpose is not otherwise an element of the crime of false imprisonment of a minor, yet our legislature clearly selected those convicted of that crime for sex offender registration. Smith's argument essentially asks that we rewrite the elements of the crime. We decline the invitation.

¶ 34. If the legislature intended that Smith be required to register only if the false imprisonment of a minor was sexual, the requirement would most often prove redundant because the offender would likely already register because of the child sexual assault provisions of the statute. Instead, the legislature opted to protect the public from those who abduct children, regardless of whether a sex crime can be proven. *People v. Knox*, 903 N.E.2d 1149, 1154 (N.Y. 2009), *cert. denied*, 130 S.Ct. 552 (Nov. 9, 2009).[27] The legislation itself is

---

[27] New York's high court recently upheld the constitutionality of a statute almost identical to ours. *See Knox*, 903 N.E.2d 1149. In *Knox*, three defendants challenged the constitutionality of New York's Sex Offender Registration Act (SORA) as applied to them because SORA required them to register as sex offenders even though their crimes involved no actual, intended or threatened sexual misconduct. *Id.* at 1151. One of the defendants, Judy Knox, pled guilty to attempted kidnapping after she grabbed the arm of an eight-year-old girl and tried to pull her away from a park. *Id.* at 1150. A second defendant,

unambiguous and provides for mandatory registration of those convicted of false imprisonment "if the victim was a minor and the person who committed the violation was not the victim's parent." *See* Wis. Stat. § 301.45(1d)(b). The legislature conditioned registration for that crime on the victim being a minor, rather than on the State being able to prove sexual motivation. " 'The legislature has the responsibility for enacting laws reflecting society's appreciation of the seriousness of one crime as opposed to another.' " *Radke,* 259 Wis. 2d 13, ¶ 29 (internal citation omitted) (holding

Eliezer Cintron, was convicted of unlawful imprisonment of two children after he locked his girlfriend and her one- and two-year-old children in an apartment for several days. *Id.* at 1150–51. Finally, Francis Jackson pled guilty to attempted kidnapping after he abducted his employee-prostitute's son in retaliation for the woman trying to quit her job. *Id.* at 1151. The trial court required all three defendants to register as sex offenders under SORA, and the high court affirmed. *Id.*

Similar to the statute challenged in our case, New York's SORA requires sex offender registration for any person convicted of certain crimes, including unlawful imprisonment and kidnapping provided the victim is less than 17 years old and the offender is not the parent of the victim. *Id.* (citing N.Y. Correction Law § 168–a(2)(a)(i) (McKinney 2003 & Supp. 2010)). The Court of Appeals of New York concluded that the state legislature had a rational basis for requiring the three defendants to register as sex offenders:

> In deciding not to exclude defendants and others similarly situated from the category of "sex offenders," the Legislature could have considered not only that cases where the term is unmerited are few, but also that the process of separating those cases from the majority in which it is justified is difficult, cumbersome and prone to error. It could rationally have found that the administrative burden, and the risk that some dangerous sex offenders would escape registration, justified a hard and fast rule, with no exceptions. . . .

*Id.* at 1154.

that more severe penalty for Class B felony "serious child offense" under "two strikes" law than Class A felony homicide offense under "three strikes" law did not violate due process).

¶ 35. Additionally, it is conceivable that the legislature considered that one "who would confine or restrain a child without the child's consent is a greater potential threat to public safety than a person involved in a factually consensual sexual relationship with a child." *See Joseph E.G.*, 240 Wis. 2d 481, ¶ 12. Smith stands convicted of falsely imprisoning a minor. The act of restraining a minor's freedom of movement by falsely imprisoning that victim is an act of control.[28] Similarly, the crime of sexual assault has been described as one that involves an offender's desire to exert control over the victim.[29] Because of an offender's control over the whereabouts of the child, the victim of a false imprisonment is in a vulnerable position. It is reasonable that the public not be at "risk that some dangerous sex

---

[28] *See* Wis JI—Criminal 1275 "False Imprisonment."

[29] Wisconsin Coalition Against Sexual Assault describes sexual assaults as acts of violence:

> [Sexual] [a]ssaults are motivated primarily out of a sense of entitlement and/or a need to feel powerful by controlling, dominating, or humiliating the victim. Victims/survivors of sexual assaults are forced, coerced, and/or manipulated to participate in unwanted sexual activity.

> If you examine the situations in which sexual abuse occurs, there is always a perceived or real power differential. The perpetrator feels entitled to take advantage of another person and believes that he or she can get away with the crime either because the victim will be afraid to tell, or because s/he is unlikely to be believed if s/he does tell.

Sexual Assault Information, http://www.wcasa.org/info/index.htm (last visited Mar. 12, 2010).

offenders would escape registration," particularly those who falsely imprison a minor. *Knox,* 903 N.E.2d at 1154. The particularly high rates of recidivism for both successful and unsuccessful sexually motivated offenders are rational concerns for legislative action. *See Smith,* 538 U.S. at 103 (recognizing that Alaska's legislature "could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism"); *Johnson,* 870 N.E.2d at 424–25 (finding the New York lower court's opinion in *Cintron,* 827 N.Y.S.2d 445, 460, "particularly well reasoned" and agreeing that "[i]f the legislature may impose enhanced criminal sanctions on defendants who create a risk of violence—as it does with enhanced sentences for offenses committed with firearms—it certainly may impose noncriminal registration requirements on defendants who create a risk of sexual assault").

¶ 36. Any or all of these reasons militate against the statute being deemed unconstitutional as applied to Smith both under the federal constitution and our state constitution. Smith has not proven that as applied to him the registration requirements are arbitrary or irrational. *See Knox,* 903 N.E.2d at 1154 ("In short, the Legislature had a rational basis for concluding that, in the large majority of cases where people kidnap or unlawfully imprison other people's children, the children either are sexually assaulted or are in danger of sexual assault."); *Johnson,* 870 N.E.2d 415 (Registration for kidnapping a child, within the Illinois Sex Offender Registration Act, was rationally related to the government purpose of protecting the public and aiding law enforcement by facilitating ready access to information about sex offenders, "regardless of whether this offense was sexually motivated.")

## IV. CONCLUSION

¶ 37. Despite Smith's concessions that the statute is facially constitutional, that procedural due process is satisfied,[30] and that rational basis review applies to his challenge,[31] he essentially demands a different and higher level of judicial scrutiny in evaluating the constitutionality of Wis. Stat. § 301.45. Smith requests that this court narrowly tailor the legislation to his satisfaction, impose a definition that he finds more palatable, and adopt the stated purpose of the legislation which he espouses. In making these requests of the court, Smith's arguments blur the lines between substantive and procedural due process, between facial and as-applied challenges, and between rational basis review and strict scrutiny.

¶ 38. In reality, our proper judicial role is one of restraint and deference. *Flynn v. DOA,* 216 Wis. 2d 521, 529, 576 N.W.2d 245 (1998) ("Our form of government provides for one legislature, not two."). For the purpose of Smith's as-applied challenge, the issue is whether requiring Smith to register as a sex offender under Wis.

---

[30] *See Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 7 (2003) (holding that Connecticut's sex offender registry law does not violate procedural due process by not providing for a hearing on dangerousness because the registry is based on the conviction itself, which "a convicted offender has already had a procedurally safeguarded opportunity to contest").

[31] *See Virsnieks v. Smith,* 521 F.3d 707, 718–20 (7th Cir. 2008) (concluding that Wisconsin's sex offense registration statute "imposes minimal restrictions on a registrant's physical liberty" that are "collateral consequences of a conviction"); *Smith v. Doe,* 538 U.S. 84, 104 (2003) (finding that Alaska's Sex Offender Registration Act imposed a "more minor condition of registration" that is not the "magnitude of restraint [making] individual assessment appropriate").

Stat. § 301.45 is rationally related to a legitimate government interest. Smith has failed to prove otherwise beyond a reasonable doubt.

¶ 39. Pursuant to Wis. Stat. § 301.45, the legislature determined that offenders who are convicted of certain statutes must register as sex offenders. Smith was convicted of an offense for which registration is required. We have outlined numerous conceivable, rational reasons why the legislature could have so chosen to include registration for Smith, who was convicted of false imprisonment of a minor, regardless of whether his crime was of a sexual nature. Smith fails to establish that any of these conceivable policy decisions are arbitrarily or irrationally applied to him.

¶ 40. Accordingly, we affirm the decision of the court of appeals. We conclude that Wis. Stat. § 301.45 is constitutional as applied to Smith because requiring Smith to register under § 301.45 is rationally related to a legitimate governmental interest. Smith has failed to prove that the registration requirements of § 301.45 as applied to him are unconstitutional beyond a reasonable doubt.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 41. ANN WALSH BRADLEY, J. (*dissenting*). When James Smith was 17 years old, he was convicted of falsely imprisoning another 17-year-old boy for the purpose of collecting a drug debt. Smith, the State, the circuit court, the court of appeals, and the majority all agree that "there is no allegation that the false imprisonment entailed anything sexual." Majority op., ¶ 3. Nevertheless, based on this conviction, the majority concludes that there is a rational basis for making Smith register as a sex offender.

¶ 42. The majority rejects Smith's assertion that the purpose of the sex offender registry is to protect the public from sex offenders. *Id.*, ¶¶ 9–10, 28. Rather, it concludes that the legislative purpose behind the sex offender registry is to "protect the public and assist law enforcement." *Id.*, ¶¶ 26, 29. It determines that there is nothing arbitrary about requiring Smith to register as a sex offender because "Smith was convicted of an offense for which registration is required" and because the legislature could have concluded that "in the large majority of cases where people kidnap or unlawfully imprison other people's children, the children either are sexually assaulted or are in danger of sexual assault." *Id.*, ¶¶ 39, 36 (quoting *New York v. Knox*, 903 N.E.2d 1149, 1154 (N.Y. 2009)).

¶ 43. Two essential errors drive the majority's analysis. First, the majority fails to carefully define the purpose of the statute. Its broad statement of the statutory purpose evinces an unwillingness to provide meaningful review. Second, the majority mischaracterizes Smith's challenge. In so doing, the majority blurs the distinction between facial and as-applied challenges and ducks the constitutional challenge that is the subject of this appeal.

¶ 44. As a result of these errors, the majority abdicates its responsibility to determine whether there is a rational basis for requiring Smith to register as a sex offender. Contrary to the majority, when I examine the legislative purpose behind the sex offender registry, I conclude that there is no rational basis for making Smith register as a sex offender when everybody acknowledges that there was nothing sexual about his offense. Accordingly, I respectfully dissent.

410

¶ 45. The majority opinion has set forth the test to determine the constitutionality of a statutory requirement under rational basis review as follows: Does the means selected by the legislature bear a reasonable and rational relationship to a legitimate governmental purpose (or interest or objective) advanced by the statute? *See* majority op., ¶¶ 11, 12.[1] Therefore, the question presented here is: Does requiring Smith to register as a sex offender because he was convicted of false imprisonment of a minor who was not his child bear a reasonable and rational relationship to a legitimate governmental purpose?

¶ 46. Analyzing and articulating the legitimate governmental purpose is the first and often most important step in determining the constitutionality of a statute. The rational basis test depends on a careful description of the governmental purpose. However the purpose is stated by the court—carefully, carelessly, narrowly, broadly, or far ranging—it often becomes determinative of whether the statute passes constitutional muster. Thus, there is substantial need for accuracy, specificity, and analysis when articulating the nature of the government's legitimate purpose.

¶ 47. Unfortunately, the majority fails to carefully identify the legitimate governmental purpose advanced by the sex offender registry, Wis. Stat. § 301.45. It declares that the purpose advanced by the sex offender registry is "to protect the public and assist law enforcement." ¶¶ 10, 13, 26, 27. This statement of the governmental purpose is far too broad to permit meaningful due process or equal protection review.

---

[1] Although the majority uses "purpose," "interest," and "objective" interchangeably, for consistency, I will use "purpose."

¶ 48. With the governmental purpose stated so broadly, mandatory "sex offender" registration would be justified for many disparate offenses, even offenses that have no nexus whatsoever to a sexual crime or even to the risk of such a crime. A conviction for violating most provisions of the Wisconsin Criminal Code could trigger mandatory "sex offender" registration to advance the purpose of "assisting law enforcement." Further, because traffic offenders may create a danger to the public, any offender found guilty of a traffic infraction could be required to register as a "sex offender." Applying the broad purpose articulated by the majority, the court would necessarily conclude that registration requirements for most criminal and traffic offenses are rationally related to the "purpose" underlying the sex offender registry.

¶ 49. As authority for its rendition of the governmental purpose of Wis. Stat. § 301.45, the majority cites a quotation from *State v. Bollig,* 2000 WI 6, ¶ 21, 232 Wis. 2d 561, 605 N.W.2d 199. Majority op., ¶ 26. Its reliance on *Bollig* is a classic example of a court yanking a quotation out of context to give the illusion of adhering to precedent.

¶ 50. *Bollig* was decided nearly ten years ago under a prior version of the statute and in a much different context than at issue in this case. At issue in *Bollig* was whether a failure to inform a defendant of his registry requirements at the time he entered a guilty plea was a violation of his constitutional rights. *Bollig,* 232 Wis. 2d 561, ¶ 1. The court held that the statute did not "evince the intent to punish sex offenders, but rather reflect[ed] the intent to protect the public and assist law enforcement." *Id.,* ¶ 21. Thus, the registry requirement was not a direct consequence of conviction but rather, it was merely a "collateral conse-

quence." *Id.*, ¶ 27. Because the statute was non-punitive, the court determined that a plea colloquy need not explicitly state the registry requirement, and the defendant was not entitled to withdraw his plea. *Id.*

¶ 51. The focus in *Bollig* was not on the legitimate governmental purpose of Wis. Stat. § 301.45 as it pertains to a substantive due process or equal protection analysis. Rather, the *Bollig* court's focus was on whether the statute qualified as a direct consequence of conviction for purposes of a plea colloquy. At the time *Bollig* was decided, dissemination of the sex offender registry was limited.[2] Thus, the court concluded that the registry was not "akin to traditional shaming punishments" because the statute "[did] not allow for the indiscriminate publication of a sex offender's vital information." *Id.*, ¶¶ 23–24. A general expression that the statute is non-punitive—the statute is not designed to punish but rather is designed to "protect the public and help law enforcement"—was a sufficient statement of the legislative intent for the purposes of the issue in that case.

¶ 52. However, the analysis in *Bollig* regarding the purpose of the sex offender registry law is not a sufficient articulation of a legitimate governmental purpose under an equal protection or substantive due process review. By superimposing the legislative intent found in *Bollig* onto a due process and equal protection challenge, the court waters down its constitutional analysis.

¶ 53. The level of generality of the majority's statement of the legitimate governmental purpose

---

[2] *Bollig* was decided several months before 1999 Wis. Act 89 created Wis. Stat. § 301.46(5n), requiring an Internet site providing sex offender information.

makes a mockery of the rational basis test and evinces the majority's unwillingness to conduct any form of meaningful judicial review. It signals, in essence, the court's refusal to test legislation under the equal protection and substantive due process provisions of the federal and state constitutions. Under the majority's approach, the people of the state lose "the touchstone of due process [] protection of the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974).

¶ 54. The actual governmental purpose advanced by Wis. Stat. § 301.45 is easily identified. It may be stated simply as protecting people—especially children—from sexual crimes. This purpose is evinced by the types of offenses that trigger the registration requirement,[3]

---

[3] In addition to child kidnapping and false imprisonment, the following offenses trigger mandatory registration: sexual exploitation by therapist; sexual assault (first, second, or third degree); incest; sexual assault of a child (first or second degree); engaging in repeated acts of sexual assault of the same child; sexual exploitation of a child; trafficking of a child (defined as trafficking for the purpose of commercial sex acts or sexually explicit performance); causing a child to view or listen to sexual activity; incest with a child; child enticement for the purpose of having sexual contact or sexual intercourse with the child; child enticement for the purpose of causing the child to engage in prostitution; child enticement for the purpose of exposing a sex organ to the child or causing the child to expose a sex organ; child enticement for the purpose of recording the child engaging in sexually explicit conduct; use of a computer to facilitate a child sex crime; soliciting a child for prostitution; sexual assault of a child placed in substitute care; sexual assault of a child by a school staff person or a person who works or volunteers with children; exposing a child to harmful material or harmful descriptions or narrations; possession of child pornography; child sex offender working with children; human trafficking if the trafficking is for the purposes of a commercial sex act. Aside

the title of the registry,[4] and the legislative history of the Jacob Wetterling Act.[5]

from kidnapping and false imprisonment, every one of the crimes triggering mandatory registration contains a sexual element.

[4] The registry's title is consistent with the public explanation of the registry's purpose. The homepage of the sex offender registry website states: "[This website] will [] serve to enhance public awareness about sexual violence in our communities and provide valuable information about the ways in which individuals and communities can protect themselves and those they love from acts of sexual violence." Wisconsin Dep't Corrections, Sex Offender Registry, http://offender.doc.state.wi.us/public/home.jsp (last visited Nov. 25, 2009). The homepage links to a page containing notices and disclaimers, which claims: "This law requires registration of individuals who have been convicted of certain sexual offenses." Wisconsin Dep't Corrections, Notices & Disclaimers, http://offender.doc.state.wi.us/public/disclaimer.jsp (last visited Nov. 25, 2009).

[5] When the Jacob Wetterling Act was initially introduced in 1992, the sponsor stated: "[This Act] may require some of us to choose between two interests. On one hand, we must protect children from sexual abuse and exploitation. On the other hand, there are those whose priority is in protecting convicted child sex offenders from the inconvenience of registering their addresses once a year." In 1993, the sponsor explained: "Sexual crimes against children are more pervasive than we would like to believe. . . . The tragedy of sexual abuse and molestation of children is compounded by the fact that child sex offenders tend to be serial offenders." "Under the Jacob Wetterling bill, a registration requirement would be triggered by the conviction of a sexual crime against a child."

The majority opinion appears to agree that false imprisonment was included as an offense triggering registration because of a purported link to sexual assault. *See* majority op., ¶¶ 31–33.

415

¶ 55. It may be that the legislature's choice to include the crime of false imprisonment of a minor is rationally related to the legitimate governmental purpose of protecting people, especially children, from sexual crimes. The legislature could have concluded that false imprisonment of a child is often a precursor to sexual abuse or exploitation of that child, and that an individual who has falsely imprisoned a child should be required to register in order to protect other children from the risk of sexual crimes.

¶ 56. This appears to be the conclusion advanced by the majority—that the "nexus" between false imprisonment of a child and a sexual crime against that child justifies the registration requirement. *See* majority op., ¶ 30. The majority states: *"[I]n the large majority of cases* where people kidnap or unlawfully imprison other people's children, the children either are sexually assaulted or are in danger of sexual assault." Majority op., ¶ 36 (quoting *Knox,* 903 N.E. 2d at 1154) (emphasis added).

¶ 57. Here, however, we need not decide whether the statute survives a facial challenge because Smith makes an as-applied challenge to the constitutionality of the statute. He contends that as applied to the facts of his underlying false imprisonment conviction, forcing him to register is not rationally related to the governmental purpose of protecting the public from sexual crimes. Despite reiterating the phrase "as applied to Smith" countless times,[6] the majority does not undertake an analysis appropriate to an as-applied constitutional challenge.

---

[6] *See* majority op., ¶¶ 1, 2, 7, 12, 16, 36, 40.

¶ 58. A defendant may challenge a statute as being unconstitutional on its face or as applied. "[A] facial challenge requires the court to examine the words of the statute on a cold page and without reference to the defendant's conduct." *People v. Stuart,* 797 N.E.2d 28, 35 (N.Y. 2003).

¶ 59. By contrast, "an as-applied challenge calls on the court to consider whether a statute can be constitutionally applied to the defendant under the facts of the case." *Id.* The court must assess the merits of the defendant's as-applied challenge by "considering the facts of his case, not hypothetical facts in other situations." *State v. Hamdan,* 2003 WI 113, ¶ 43, 264 Wis. 2d 433, 665 N.W.2d 785.

¶ 60. "In an as-applied challenge, if the statute in question cannot be constitutionally applied to the litigant, then she will prevail without having to show that no set of circumstances exists under which the statute could be constitutionally applied to someone else." Michael C. Dorf, *Facial Challenges to State and Federal Statutes,* 46 Stan. L. Rev. 235, 239 (1994); *see also State v. Robinson,* 873 So. 2d 1205 (Fla. 2004) (holding that as applied to the facts of the case where the State conceded that the crime contained no sexual element and the circumstances of the crime belied any sexual motive, mandatory sex offender registration violated the defendant's due process of law); *State v. Small,* 833 N.E.2d 774 (Ohio Ct. App. 2005) (holding that as applied to the facts of the defendant's conviction for kidnapping, the registration requirements were unconstitutional).

¶ 61. Because Smith poses an as-applied challenge, the majority must tie the legitimate government purpose underlying the sex offender registry to the facts of Smith's case. Smith contends that there is no

rational basis for making him register because it is undisputed "that his underlying conviction had no sexual element or motivation."[7] Thus, the question presented is whether the registration requirement is constitutional even though it is undisputed that Smith's crime of false imprisonment was not sexually motivated and involved no sexual act or misconduct.

¶ 62. The majority ducks the actual question presented by flipping it on its head. Instead, it chooses to tackle a far easier question: is there a rational basis for making Smith register even if a prosecutor cannot prove that his crime had a sexual element or motivation? *See* majority op., ¶ 31 ("regardless of whether the State can prove a sexual component"); *id.* ("to require a second layer of proof regarding the sexual nature of the crime"); *id.,* ¶ 32 ("regardless of whether there is proof that the crime he committed was sexual"); *id.* ("regardless of whether proof exists as to the crime's sexual underpinnings"); *id.,* ¶ 34 ("regardless of whether a sex crime can be proven").

¶ 63. To answer this question, the majority addresses hypothetical facts. It asks: "Is a person who falsely imprisons a minor *with the purpose to commit a sexual assault* less dangerous to the public if the assault is thwarted, the child cannot be found, or the child cannot communicate about the crime?" Majority op.,

---

[7] Smith was originally charged with party to the crime of taking a hostage, contrary to Wis. Stat. §§ 940.305 and 939.05. A conviction for hostage taking is not a crime that triggers mandatory sex offender registration. Smith pled down to false imprisonment, contrary to Wis. Stat. § 940.30. It is clear from the sentencing transcript that neither the sentencing judge nor the author of the presentence investigation contemplated the possibility that Smith would be required to register as a sex offender under the statute.

¶ 32 (emphasis added). It states further: "An abductor's intentions or actions cannot always be proven or alleged, *particularly when a child is missing or the body is decomposed." Id.* (emphasis added).

¶ 64. These hypothetical inquires are not applicable here, and none of the majority's analysis justifies the inclusion of Smith based on the facts of his case. As a result, the majority fails to determine whether the statute is arbitrary or irrational as applied to Smith and fails to squarely address the claim in this appeal.

¶ 65. Contrary to the majority, I conclude that there is no rational basis for requiring Smith, who committed no sexual offense, to register as a sex offender. The government purpose of protecting the public—particularly children—from sexual crimes is not reasonably related to the requirement imposed by law that he register as a sex offender. To the contrary, the governmental purpose may be undermined by requiring non-sex offenders to register. When the registry is clogged by offenders who bear no meaningful relationship to its legislative purpose, the court undermines the legislative purpose in creating the registry.[8]

---

[8] A recent news report indicates that "[t]he sheer numbers of sex offenders on the registries in all 50 states . . . are overwhelming to local police departments and, at times, to the public, who may not easily distinguish between those who must register because they have repeatedly raped children and those convicted of nonviolent or less serious crimes, like exposing themselves in public." Monica Davey, *Case Shows Limits of Sex Offender Alert Programs,* N.Y. Times, Sept. 2, 2009. The mother of Jacob Wetterling, who has been an activist against sexual violence since her son was kidnapped, commented: "The thing that is hard to remember is that all people on a registry are not the same, and we need to distinguish between them." *Id.* So much the more so for James Smith, who was convicted of a crime where there is no indication of a sexual motivation or element.

¶ 66. The majority holds its analysis up as "a paradigm of judicial restraint." Majority op., ¶ 17. To the contrary, I conclude that it has abdicated its responsibility. The majority fails to provide meaningful review, thus depriving citizens of the touchstone of due process protection of the individual against arbitrary action of the government. By mischaracterizing the defendant's challenge, it blurs the distinction between as-applied and facial challenges. Ultimately, by ducking the actual facts of this case, it diminishes the effectiveness of the registry in protecting the public—especially children—from sexual crimes. Accordingly, I respectfully dissent.

¶ 67. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.